# Nicholas Penna et al v. State Highway Board

( 170 A.2d 630 )

March Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed March 23, 1961

*Bloomer & Bloomer* for the plaintiff.

*John D. Paterson* and *Keith E. King* for the defendant.

**Hulburd, C. J.** This appeal is concerned with the amount of compensation a landowner is entitled to receive for land taken in condemnation proceedings. The plaintiffs were owners of a strip of land

in Dorset, Vermont which bordered on Route 7. It contained about two and a half acres. On it were located a cottage and five tourist cabins. Three of the cabins were on the land at the time the plaintiffs purchased it in 1952 for the sum of $9,500. Two others had been added later by the plaintiffs at a cost of $4,300. The taking by the State Highway Board consisted of about one-half of the Pennas' land, and it was the half upon which all the cabins were located. As a result the Pennas were left with the cottage, suitable for use as a residence, together with the land upon which it was situated, of a combined value of $2,500, but shorn of their tourist business. In these circumstances the Highway Board awarded the plaintiffs the sum of $9,050. With this sum the plaintiffs were dissatisfied, and, in the litigation which followed, the jury awarded them the sum of $12,500.00. The Highway Board, in turn, is dissatisfied with that figure and comes to us claiming that the verdict resulted from error in the court's instructions to the jury and its rulings on admission of evidence.

Before considering the individual assignments of error, we think it desirable to make some observations concerning the statute which defines the elements of damage upon which compensation is to be made to the owner of land taken in condemnation proceedings. We are prompted to do this because the defendant Highway Board takes the position that "Our statute is not so explicit and is in fact, as above stated, a restatement of the general law existing prior to 1957, and the court below erred in instructing the jury to add the business loss to the market value of the property." We are bound to say that such a statement is fraught with error. The statute passed in 1957, which the defendant refers to as a restatement of the general law prior thereto, is 19 V.S.A. §221(2). It reads as follows: "Damages resulting from the taking or use of property under the provisions of this chapter shall be the value for the most reasonable use of the property or right therein, and of the business thereon, and the direct and proximate lessening in the value of the remaining property or right therein and the business thereon."

This Court recognized in *Record* v. *State Highway Board*, 121 Vt. 230, 237, 154 A.2d 475, that the legislature by the passage of this act was bent on correction of what it considered inequitable and unjust treatment of landowners in highway condemnation cases.

Prior to the enactment of our present statute, it was generally held that "In the absence of statutory authorization for payment * * * injury to or destruction of a business conducted upon lands taken by eminent domain do not constitute elements of just compensation under the terms of the usual constitutional provisions." Nichols on Eminent Domain, Vol. 4, p. 259. Such was the attitude of this Court as reflected generally in *Nelson* v. *State Highway Board,* 110 Vt. 44, 53, 1 A.2d 689, 118 A.L.R. 915. It cannot be denied that this rule at times was harsh in its application. It was generally justified by saying "that business and the fruits thereof are too uncertain, remote and speculative to be used as the criterion of the market value of the land upon which such business is conducted." Nichols on Eminent Domain, Vol. 4, p. 259. Actually this justification may be a better one than first appears, but we deem that it is perfectly clear that the legislature intended to change all this. We have no difficulty in discovering its intent that where land is condemned for highway purposes the owners shall be compensated: (1) for the value of the land taken, (2) for the value of the loss of business thereon, and (3) for damage resulting to the balance of the land remaining to the owners where an entire parcel is not taken. As was said concerning a Massachusetts condemnation statute, "The purpose of the legislature to deal liberally with those affected by the construction of the reservoir is thus shown and the provisions now before us should be construed in accordance with the intention thus manifested." *Allen* v. *Commonwealth,* 188 Mass. 59, 61, 74 N.E. 287, 288, 69 L.R.A. 599. Our problem, however, has become not one of construction of the statute but of its practical application. It is by no means easy as we shall soon discover.

We turn now to the particular problems which arise under the statute in this case. The first ground on which the defendant excepted to the court's instructions was that the court had separated the question of business loss from the question of compensation for the taking of the land itself contrary to the statute. Apparently the defendant was prompted to take this position because in deciding *Record* v. *State Highway Board, supra,* this Court said, "It is apparent that the court considered in this case, that business profits were not the subject of independent compensation from the land itself. In this we find no error." By so holding, this Court is not to be understood as saying that in no case may business loss be the subject of independ-

ent compensation in addition to that allowed for the land itself. What we were trying to make clear in the *Record* case was that every case presents its own factual problem. In each instance the question arises to what extent, if any, does the evidence show that the plaintiff has suffered a loss to his business which has not necessarily been compensated for in the allowance made for his land. The nature of the business and the manner in which the plaintiff marshals his proof will be determinative as to whether the court will be justified in submitting the business loss as a separate item. In this case the plaintiffs in their proof made no attempt to keep the business loss an independent element. The opinions of Buckley and Kamber, who testified in behalf of the plaintiff, clearly make this evident. A plaintiff is entitled to be compensated both for the loss of his land and the loss of his business. If the evidence he presents concerning the land reflects both the value of the land and the business on it, as it almost inevitably does in the case of farm land, for instance, then, to compensate the landowner for his business loss, that is, farm income as well as the land, is to give him double compensation. Furthermore, once the Highway Board has allowed damages on account of a business, all talk about profit ceases to have further significance. Evidence of profits is admissible to help determine the amount of loss which the owner of a business may have sustained. Immediately that has been done and has been allowed for, profits become merged in the amount assigned for business loss. Their significance is at an end. So when the defendant below urged on the court, "The same income cannot be used to establish a value for the property on any reasonable basis and again used to establish the value of the business," he was on sound ground. When, however, he assumed that land damage and business damage could not in any case be shown independently, we think he went beyond the intent of the statute. In any event, what would have been error in this particular case was obviated by the fact that the evidence before the jury tended to show that the plaintiffs' tourist business could not fairly be claimed a success. The two best years of the plaintiffs' operation showed a net loss according to their income tax returns. The trial court's instructions to the jury regarding damage to the plaintiffs' business were qualified. They were to apply only "if you find that a profit had been made." Under such a submission, with the evidence

standing as it did, we are not satisfied that prejudicial·error resulted. *Duchaine* v. *Ray,* 110 Vt. 313, 321, 6 A.2d 28; *Meyette* v. *Canadian Pacific Ry. Co.,* 110 Vt. 345, 356, 6 A.2d 33; *Viens* v. *Lanctot,* 120 Vt. 443, 445, 144 A.2d 711.

 Were it not for the saving clause just considered, we would have to agree with the defendant in regard to its next exception, that the trial court compounded its error when it went on to instruct the jury that if the plaintiffs were unable to find a comparable property or another business or job it would then be proper to consider, among other things, the life expectancy of the plaintiffs, which had been put in evidence in the case, in getting at the damage to the business. Neither the statute nor logic support any such proposition of law. Under it, if land upon which a business was being carried on, belonged to a corporation and were condemned, its deathless nature would result in limitless damages. Life expectancy has its place in permanent personal injury cases but no reason has been advanced why it should be applicable when land is condemned upon which a business is located. Again, it would be necessary to reverse the judgment in this case if there were reason to believe that the verdict was based in any part on life expectancy, but since the court made its instructions applicable only "if a profit had been made," we are not convinced that prejudice resulted, especially in the light of the verdict brought in.

 The defendants have further assigned as error the court's admission of testimony by Mrs. Penna that a neighboring property owner was asking $25,000.00 for his property. The appellant contends that such evidence is never admissible on the question of value. With this we agree. 5 Nichols on Eminent Domain, §21.4(3). The evidence was purportedly offered by the plaintiffs to show that they had "made reasonable efforts to replace what had been taken." There was no evidence to show the nature of the property nor whether it was similar to the plaintiffs'; moreover, it developed that the figure was for a house, "furnished." Before the plaintiff-wife got through with the subject she stated that the amount wanted by the neighboring owner was "too much." All of this testimony was immaterial to the question for determination. It was so lacking in probative value that we are unable to conceive how the jury could have made any use of it at all to say nothing of an improper use. "Even when the appellate

court feels that error has been committed in admitting certain evidence, it will not, as a rule, find prejudice where the evidence admitted was entirely irrelevant, *i.e.,* immaterial." *Ackerman* v. *Kogut,* 117 Vt. 40, 48, 84 A.2d 131. No ground for reversal is presented. *Vermont Salvage Corp.* v. *Northern Oil Co., Inc.,* 118 Vt. 337, 339, 109 A.2d 267.

The defendant has briefed but one other exception. It is directed against the court's charge. Neither on oral argument nor in the defendant's brief does it appear what part of the charge is under attack. On this account we have not attempted to inquire into the error claimed.

We have carefully checked the transcript in this case. Although a good deal was put before the jury which did not aid them in their task, they were told in summary by the court: "The combined figures of the difference in fair market value and the loss of their business, if you find any loss, is the verdict you will return to this court in this matter." This much was unqualified, and we are inclined to think that the jury did not go astray, but did bring in a verdict which reflected the items of damage to which the plaintiffs were entitled.

*Judgment affirmed.*