## Sumner F. Farr et al v. State Highway Board

[189 A.2d 542]

November Term, 1962

Present: **Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed January 2, 1963

Reargument Denied March 6, 1963

*Latham & Eastman* and *Robert P. Davison, Jr.* for the plaintiffs.

*Louis P. Peck,* Legal Assistant to the Attorney General, for the defendant.

**Holden, J.** By this appeal the State Highway Board seeks to vacate a judgment of the Chittenden County Court at its March Term 1962 in a highway condemnation proceeding. The judgment followed special and general verdicts returned by the jury on an appeal from an original award by the condemning authority for the taking of 28.7 acres of land from the plaintiffs' farm of two hundred ninety-five acres in the town of Richmond. The land was taken for construction of a part of the Interstate Highway System. The principal question is the court's treatment and consideration of extensive sand deposits on the condemned land.

During the previous March Term in 1961, a pretrial order was entered under the direction of a different superior judge than the judge who presided at the trial. This order confirms the agreement of counsel that the date of taking was December 28, 1960. It further confirms a stipulation concerning identification of the condemned parcel and the parties' arrangements for taking a view. At the

conclusion of the pretrial order, without reference to any agreement, it is stated, "There appears to be no extra compensable items."

At the trial the plaintiffs introduced evidence that they had maintained an operating sand pit on other parts of their farm. Prior to the taking, the plaintiffs had sold considerable quantities of sand at unit prices which varied from five to twenty-five cents per cubic yard. Other evidence was introduced by the plaintiffs, and confirmed by the defendant's engineer, that after the date of taking 200,000 yards of sand were excavated from the condemned parcel which was used in the Interstate Project.

When the case was submitted, the jury was instructed to complete and return two verdicts which had been prepared for them. The first was general in nature and was designed to report the findings as to the difference in the market value of the farm resulting from the condemnation. The second was a special verdict. As to this, the court instructed the jury that if any portion of the first verdict included an allowance for sand, it should indicate the extent of such allowance. The interrogatory prescribed for reporting this determination was, "What portion of the above amount of your verdict is awarded for sand deposits?"

The defendant objected to the requirement of a special verdict on the ground that the issue of the sand deposits constituted an extra compensable item which was specifically precluded by the pretrial of May 1, 1961.

The jury returned a general award for the plaintiffs in the amount of $9180. The special verdict indicated that of this amount, $4500 was allowed for the sand deposits.

The trial court was correct in not withholding consideration of the sand deposits from the jury on the strength of the pretrial order. The order contains no specific agreement or direction that the subject of the inquiry in the special verdict was settled or precluded. It states merely the observation or understanding of the court conducting the pretrial hearing, that no extra compensable items of damage were claimed.

Pretrial orders should be agreed upon by counsel. The order should recite, in unequivocal language, the substance of specific stipulations by the parties resulting from the conference, so there can be no question about these matters when the case comes on for

hearing. Issues that are not explicitly disposed of by agreement or express admission remain for trial. 1 Barron and Holtzoff, Federal Practice and Procedure, Rules Edition, §473, p. 963; Nims, Pretrial, p. 156.

In any event, the recital in the pretrial order as to extra compensable items is not of controlling importance, in view of the posture of this appeal. Whether the sand deposits were actually the subject of extra compensation by the jury, apart and independent of the award for the land taken, is the controlling question presented for review. And this very issue is the main concern of the remaining assignments of error claimed by the highway board.

The problem of mineral deposits in land taken by eminent domain presents a peculiar difficulty. The law is well established that the existence of known mineral deposits, including sand and gravel, cannot be ignored. The deposit may be of value and a proper factor to be considered in arriving at the true market worth of the parent property before and after the condemnation. It is equally well settled that such deposits cannot be made the subject of a separate evaluation, apart from the land where it is contained, and added to the market value of the land as additional compensation for the taking. *Montana Railway Co.* v. *Warren,* 137 U. S. 348, 352, 11 S. Ct. 96, 34 L. Ed. 681; *United States* v. *158.76 Acres of Land,* 2 Cir., 298 F.2d 559, 561; *Nedrow* v. *Michigan-Wisconsin Pipeline Co.,* 245 Iowa 763, 61 N.W.2d 687, 694; *New York Central Railroad Co.* v. *Warren,* 234 N. Y. 208, 137 N. E. 305, 308; *Edwin Moss & Sons, Inc.* v. *Argraves,* 148 Conn. 734, 173 A.2d 505, 506; *Hollister* v. *Cox,* 131 Conn. 523, 41 A.2d 93, 156 A.L.R. 1412, 1415, and annotation that follows; Nichols, Eminent Domain, §13.22 (4th Ed. 1962); 29 C.J.S. Eminent Domain, §174, p. 1043; 18 Am. Jur. Eminent Domain, §242, p. 878.

The worth of mineral deposits, like improvements on the land, cannot be recovered as such. But they are material and important to the consideration of the main issue. See *Demers* v. *City of Montpelier,* 120 Vt. 380, 389, 141 A.2d 676.

The jury was bound to consider the farm as an entire unit, prior to the condemnation, and afterward as well. Like most farm properties, its total value was composed of different elements. The growing timber and the sand deposits, although not essential to the dairy

operation, each contributed something to the overall market value of the property.

The uncertainties of the commodity market, and the unpredictable and speculative nature of anticipated profits or unexpected losses, forbid the evaluation of the sand deposits as potential merchandise. Nichols, Eminent Domain, *supra,* §13.22. Although the plaintiff introduced evidence which had this tendency, and the defendant cross-examined on the subject, it is apparent that the jury was not persuaded by it. And the plaintiffs' evidence in this regard was not accepted as the criterion for the amount indicated in the special verdict.

Had the jury adopted the plaintiffs' minimum calculation of 200,-000 yards at five cents a yard, the valuation of the sand deposit would have reached at least $10,000. The interrogatory was answered in the amount of $4,500.00

There was nothing in the court's instructions to convey the idea that the jury was to determine the "before and after" market value of the farm and add to that computation the separate value of the sand deposit. After explaining that the plaintiffs' compensation should be measured by the difference in the fair market value of their land before, as compared to the market value after the taking, the court went on to explain, "In arriving at the fair market value, you should consider, naturally, the number of acres involved, the location, the nature of it; that is, whether meadow or timber land or woodland or pasture; the use that was made of it; that is, the most reasonable use, the original cost of the property to the plaintiffs, the value of the non-access acreage, the effect of the taking as it pertains to the remaining property, if any, the physical condition, the general overall usefulness of the property, the timber, loss of timber, the loss of wood, loss of sand, if any. Consider all these matters as you find them to be from the evidence and then decide what the difference in the fair market value of the property is, or was, on December 28, 1960, when the State acquired the land." Later the presiding judge pointed out to the jury that "the law does not permit land owners to isolate areas of land and place upon it an inflated value . . . . You must look at the property on the overall basis."

From the colloquy that followed the instructions, between the presiding judge and counsel, it appears that the court was apprehen-

sive that the question of the sand deposits might have violated the pretrial order in reference to extra compensable items. In substance, the trial court stated it required the special verdict to enable this reviewing court to reduce the general award by the amount specified in the interrogatory, if the jury's consideration of the sand deposit should be held to be in error.

We interpret the special verdict as the expression by the jury of its judgment in dollars of the amount and degree by which the market value of the Farr farm was affected by the presence of the sand deposit. This conclusion is consistent with the requirement that we construe the record on appeal to support the result reached in the court below, if this reasonably can be accomplished. *Goodwin, Admx.* v. *Gaston,* 103 Vt. 357, 371, 154 Atl. 772. To hold otherwise would require an assumption on our part that the jury disregarded the court's instructions on the correct measure of compensation. Such an assumption is not supported by the record and is unwarranted in law.

Since the extent of the sand deposit was not treated as marketable merchandise, nor added as an extra increment to the differential in the market values of the farm caused by the condemnation, the jury's statement as to how this factor was composed in the ultimate award was not in error. A review of the record in its entirety indicates the judgment was reached according to law and achieved a proper result.

*Judgment affirmed.*

## On Request for Permission to Reargue

**Holden, J.** The defendant has filed a timely request for permission to reargue this appeal on the contention this Court has overlooked and failed to apply the so-called enhancement principle, particularly as expressed in *United States* v. *158.76 Acres of Land,* 2 Cir., 298 F.2d 559, 560. This case and its doctrine was not overlooked. Indeed, this authority was cited in the opinion in support of the only point to which it is germane to the present controversy, namely, ". . . that if condemned land contains a mineral deposit, such as gravel, it is proper to consider the fact in determining the market value of the land as a whole, but it is not permissible to determine separately the value of the mineral deposit and add this to the value

of the land as a unit." *United States* v. *158.76 Acres of Land, supra,* 298 F.2d at 561.

In the federal case, the enhancement principle became involved on a point of evidence. The landowner introduced in evidence a contract for the sale of gravel for the very project for which the land was condemned. This and other evidence along the same line was held to have been improperly received on the settled rule that it is unfair to require the government to pay the enhanced price which the federal project alone has created. The enhanced price reflects elements of value which are dictated by the urgency of the situation which is not the true market value. *United States* v. *Cors,* 337 U. S. 325, 332, 69 S.Ct. 1086, 93 L.Ed 1392; see also *United States* v. *Miller,* 317 U. S. 369, 62 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55, 63, and annotation; *Calvo* v. *United States,* 9 Cir., 303 F.2d 902, 907.

The record certified in the present appeal does not support the application of the doctrine of these cases, to achieve a reversal of the judgment below. Although the plaintiff testified without objection that he had sold some sand for use in the project, there was nothing in the evidence to indicate that the market value of lands containing sand deposits was controlled or enhanced by the construction of the interstate system. There was evidence that the plaintiff had sold sand and gravel from operating pits on other holdings in the area over an extended period of time. One appraiser testified, in response to cross-examination by the defendant, that there was always a good demand for sand in the general area. Unlike *United States* v. *158.76 Acres of Land,* referred to above, evidence concerning the plaintiffs' current contracts for the sale of sand and gravel was specifically excluded.

The testimony that 200,000 yards of sand was removed from the condemned land was received without objection. In any event, this was a relevant and material fact to the nature and extent of the deposit in considering the overall value of the land as a unit.

The remaining points upon which the defendant seeks reargument were not presented in the original briefs as required by Supreme Court Rule 22. Moreover, it does not appear these questions were raised in the trial court, nor that they would affect the final result had they been properly preserved.

*Permission for leave to reargue is denied. Let full entry go down.*