### Mary N. Gibson Estate v. State Highway Board

[258 A.2d 810]

No. 1270

Present: Holden, C.J., Shangraw, Barney and Smith, JJ.

Opinion Filed October 17, 1969

48

*Black & Plante,* White River Junction, for plaintiff.

*Downs & Rachlin,* St. Johnsbury, for defendant.

**Barney, J.** In the town of Sharon an interchange was constructed for access to Interstate 89. Vermont Route 132 meets Vermont Route 14 in Sharon village and the interchange services both of these highways, being located nearly in the midst of the village. As the interstate highway approached, passed through and left the village it crossed lands of the plaintiff, and the construction of the interchange took further property of the estate. The value of the taking was in controversy and the matter went to trial. The jury, by its verdict, awarded thirteen thousand five hundred dollars as the fair market value of the land actually taken, six thousand dollars as severance damage to the land remaining and thirty thousand three hundred dollars as damage for business loss. The state disputes the propriety of the business loss award and has brought that issue here on appeal.

Almost thirty-two acres of land and some seven buildings, including a brick house and a sawmill structure with its associated buildings located in the village, were taken. Some of the remaining property was deprived of access, and a number of drainage rights and spring lines were taken, also. The state took the position in its evidence that there was no business loss and valued the land taken and the severance damage at seventeen thousand six hundred and twenty-five dollars.

The plaintiff's case put the value of the property taken, not including the sawmill property or business, at ten thousand two hundred fifty dollars. The state's valuation for the same portion of the taking was seven thousand one hundred and twenty-five dollars. A plaintiff's witness put a value of fourteen thousand dollars on the sawmill associated real estate, compared to ten thousand five hundred dollars assigned by the state's witness.

The sawmill business, on the basis of its operating history, excluding land and equipment, was valued by an expert for the plaintiff at fifty-three thousand dollars. The replacement cost approach showed a figure of over fifty thousand dollars necessary to reproduce the operating mill without considering land cost or equipment.

Although the sawmill, along with the rest of the property, stands in the name of the plaintiff estate, the mill business was in fact conducted by one Paul Barrett. He had been in charge of the operation since the death of Mary Gibson's hus-

band in late 1962. Paul Barrett had been, to all intents and purposes, a part of the Gibson family since he was eleven, and, under Mary Gibson's will, was to inherit the sawmill business and the land associated with it.

Subsequent to the taking Barrett took steps to acquire, for fifty-five hundred dollars, a new site of five and a half acres. The evidence showed that, although this business could, in a sense, be moved, this was not a portable mill but a permanent installation that had been in operation there for forty years. The proposed move displaced the mill three miles out of the village, away from its former highway junction location, onto a bare, unprepared site without usable buildings. Its relation to its timber sources would be altered, and its inventory re-built, disposition of the old one being forced by the necessity of vacating the old location. Three phase electrical service would have to be brought to the new location at an estimated cost of forty-five hundred dollars. The lack of water for wash-ing logs at the new site would require additional equipment by way of a debarking machine. The cost for this, according to the testimony, ranged from a possible low of five thousand dollars for a used machine, whose suitability was undetermined and uncertain, to from twenty to twenty-five thousand dollars for a new unit. It was further in evidence that the business opera-tion, at the time of trial, had had to be shut down for more than a year and the machinery stored.

██ ██ The state's initial position in this case seemed to be that unless the entire business is "inextricably" connected with the land taken, but not represented in the value of the land condemned, business loss is not recoverable under our law. This overstates the matter. *Record* v. *State Highway Board*, 121 Vt. 230, 154 A.2d 475, does refer, at page 237, to a business "inextricably related and connected with the land." But the full context of that comment, quoted below, makes it clear that this Court viewed the inextricable relation-ship as an *a fortiori* ground for business loss reimbursement, not as an indispensible prerequisite:

> In the Nelson case . . . the Court recognized that there are many injuries resulting from highway construction for which land owners cannot be compensated. Mindful of these inequities the legislature quite clearly recognized

that in some instances a business enterprise might be invaded and the yield of the business lessened or destroyed as a result of the taking of the land upon which the business is situated. Thus it imposed the statutory function upon the trial court to look beyond the value of the improved real estate actually seized by the State and search out to what extent, if any, the business interests of the land owners were damaged. It is only to the extent that a business is taken by the appropriation of the land on which it is situated that the legislature meant that compensation be paid. A business may be inextricably related and connected with the land where it is located so that an appropriation of the land means an appropriation of the business. More often, however, this is not the case and an appropriation of the land has but a limited effect on the business. And this effect is not necessarily adverse. Where an appropriation necessitates a relocation in whole or in part of the business, the question is what has, or would the business suffer by being transplanted. The trial court was required to look at all the circumstances. A factual problem was presented, rather than a legal one.

This view is reaffirmed in *Penna* v. *State Highway Board*, 122 Vt. 290, at 293, 170 A.2d 630, and in *Fiske* v. *State Highway Board*, 124 Vt. 87, at 91, 197 A.2d 790. The language of 19 V.S.A. Sec. 221(2) specifically speaks in terms of the "lessening in the value" of the business on the condemned property resulting from the taking. The burden is of course on the plaintiff to make such a showing, and we are satisfied from the record that a factual issue for resolution by the jury was raised by the evidence presented.

The state contends that some of this evidence as to costs and value was inadmissible, and that the failure to exclude it as the state requested was reversible error. The testimony related to investigations and inquiries Paul Barrett made of others to determine the measure of some of the expenses involved in reestablishing the sawmill at a new site. One instance related to an estimate from a power company representative that installation of three phase electric power at the new location would cost forty-five hundred dollars. A second was his report of a quoted price of five thousand dollars for a used

debarker machine of uncertain condition, and an advertised price of twenty-five thousand for a new unit. The other instance complained of was a remark that in estimating the cost of building new sheds he added fifty per cent to the material cost as representing the cost of labor, having been advised by "several carpenters" that this was an appropriate measure.

■■ This evidence is condemned by the state as hearsay. But we are dealing, ultimately, with the opinion of this witness as to values, opinion based not on special training or professional experience particularly, but rather on accumulated information, derived frequently from deliberate investigation and inquiry. This was recognized and validated in *Lamoille Valley R. R. Co.* v. *Bixby,* 57 Vt. 548, 563–4. As is pointed out in *Teitle* v. *Insurance Co. Ltd.,* 116 Vt. 228, 233, 73 A.2d 300, testimony as to value is not rendered inadmissible because it is based in part on information received from others. The competency of the witness to testify as to value was for the trial court, and its decision is conclusive unless it appears from the evidence to have been erroneous, or founded on an error of law. *Teitle* v. *Insurance Co. Ltd., supra,* 116 Vt. 228, 230, 73 A.2d 300.

■ The remaining question relates to the sufficiency of the evidence to support the verdict as to business loss. If the verdict can be justified upon any reasonable view of the evidence, it must stand. *Jackson* v. *Rogers,* 120 Vt. 138, 150, 134 A.2d 620.

Unfortunately, the otherwise justifiable verdict in this case shows evidence of being marred by misconceptions. Some of the expert testimony insisted on allocating damages in a manner likely to mislead even a conscientious jury in the absence of careful explanation from the trial court in its charge. This absence was a shortcoming of this trial.

As everyone concedes, the Vermont business loss law is both unique and imprecise, particularly when coupled with the requirement of 19 V.S.A. Sec. 221(2) that real estate be valued at its most reasonable use, interpreted by most experts as "highest and best" use. Yet 12 V.S.A. Sec. 1904a, by requiring the jury to return separate verdicts as to land damage, damage to land not taken and business loss, in effect compels the jury to make an exact division between these

categories. The difficulty arises from the fact that technical precision in this area may require allocations of loss seemingly at variance with common understanding. This is where the burden of careful explanation falls on the trial court.

 As we have previously noted in the opinion, total destruction of the business is not a prerequisite to an award for business loss. Quite obviously, also, an award for business loss can never exceed the proved marketable value of the business. Neither can an award for partial business loss exceed the measure of a total business loss. A further word may be helpful with respect to the transfer of a business to a new location. Such relocation may be possible by means of substantial capital investment, but, again, the award cannot outreach the worth of the going business at the old location. Although the possibility of relocating a business may be helpful in arriving at business loss, the award ought not to distinguish between a business in fact moved and one for which the same possibility existed but was not undertaken.

Additionally, the requirement that the land be valued at its most reasonable use may intrude upon values ordinarily understood to be allocated to the business itself. The present case is representative. Here, according to the testimony, the presence of a physical attribute of the land, a brook, could be equated to an additional machine called a debarker, necessary if the brook did not exist. Similarly, the existence of three phase electric service, which might be thought of more as a manufacturing accessory than as part of the land, is subject to varying allocation in common understanding. But, under highway law and its land value measure based on the most reasonable use of the land as that of a sawmill site, both were properly to be included as part of the value of the land.

This requirement demonstrably escaped the jury. This is understandable since the state, contender for the correct proportion, introduced no business loss evidence, and the chief expert for the plaintiff allocated the three phase electricity and the log washing advantage to the business, rather than to the property. The charge of the court gave no instruction directed to this particular possibility of misunderstanding.

The jury misplaced some of these values. This is clear from the fact that they discounted their allocation for land damage

to an amount substantially less than the lowest value in any of the testimony. It did, however, give an award for business loss by special verdict that roughly measured evidenced value for the three phase electricity and the debarking machine. Since the total verdict did not outrun the testimony, it would appear sustainable. *Sheldon* v. *Northeast Developers,* 127 Vt. 15, 18, 238 A.2d 775.

■ Unfortunately, this requires an impermissible degree of speculation. The evidence presented contained figures for capitalization of a new mill which, although acceptable as aids to measure the worth of the mill condemned, were not themselves available as business loss damage. The instructions did not clarify this point.

■ On the other hand, elements properly attributable to business loss, such as the suspension of operations, the costs of moving to the new site and the value of the changed accessibility, although not in all cases accompanied by adequate valuation evidence, were available in support of the business loss verdict. But this Court cannot reassign these various values among the special verdicts to confirm what might be a verdict justifiable in total amount even if the dollar amounts were clearly shown. For this reason the matter must be remanded for proper determination under correct instructions. The interlocking nature of the evidence requires that the total question of damages be resubmitted to prevent a failure of justice. *Levy* v. *Hall,* 119 Vt. 143, 152, 120 A.2d 568.

■ The matter of damage on account of any delay is assumed to be included in the appropriate award of interest. 12 V.S.A. Sec. 2431.

*Judgment reversed and cause remanded for a new trial on all issues.*

**Keyser J.,** being disqualified, did not sit.