## Vermont Terminal Corporation v. State Highway Board

[ 313 A.2d 12]

No. 225-72

Present: Barney, Smith, Keyser, and Daley, JJ., and Larrow, Supr. J.

Opinion Filed December 4, 1973

*Waldo C. Holden, Esq.,* and *Harold J. Gilbar, Jr., Esq.,* Bennington, for Plaintiff.

*Kimberly B. Cheney,* Attorney General, and *Richard M. Finn,* Assistant Attorney General, for Defendant.

**Daley, J.** The plaintiff owned 14.8 acres of land in the Town of Bennington, upon which was located a truck terminal building and allied facilities. In January of 1972 the State of Vermont, exercising its power of eminent domain, took approximately 7.7 acres of this land for highway purposes. The terminal building itself was not taken and stands with its component facilities, office space, and parking lot upon the 7.1 acres remaining. The plaintiff was awarded damages which it deemed insufficient. As a dissatisfied landowner it then appealed to the Bennington County Court where the cause was heard, *de novo,* by the court by agreement of the parties—jury trial being waived.

In its findings of fact the court found the damages sustained by the plaintiff to be fifty-five hundred dollars ($5,500), representing the value of the 7.7 acres of land actually taken. The court entered judgment for the plaintiff for this amount with interest.

The plaintiff appeals to this Court from the judgment below claiming that the lower court erred by not finding severance damages under the provisions of 19 V.S.A. § 221. It also contends that the court erred in admitting oral testimony relative to a certain zoning ordinance of the town. The competency of the defendant's appraiser and the reliability of his comparable sales evidence is questioned. Finally, the plaintiff challenges the findings and judgment awarding damages for uncut timber upon the land actually taken.

Both parties agree that the applicable rule of damages is found in 19 V.S.A. § 221 (2):

Damages resulting from the taking or use of property under the provisions of this chapter shall be the value for the most reasonable use of the property or right therein, and of the business thereon, and the direct and proximate lessening in the value of the remaining property or right therein and the business thereon.

Under this section "the owners shall be compensated (1) for the value of the land taken, (2) for the value of the loss of business thereon [not applicable here], and (3) for damage resulting to the balance of the land remaining to the owners where an entire parcel is not taken." *Penna* v. *State Highway Board,* 122 Vt. 290, 292, 170 A.2d 630 (1961).

By virtue of 12 V.S.A. § 1905 the trier of fact shall find separately the value of each element specified in 19 V.S.A. § 221 (2). The lower court did so by allocating all of the awarded damages to the first element listed in *Penna, supra,* and finding no damages for the third element.

The testimony relative to monetary damage suffered by the plaintiff as a result of the condemnation of its land was as follows. The plaintiff's expert witness testified that the total property, the entire tract of land with the building and improvements thereon, had a fair market value of $200,000 prior to the taking and a fair market value of $185,000 immediately thereafter. The expert employed by the defendant testified that the fair market value of the land prior to the taking was $20,500 and $17,500 immediately thereafter. Upon cross examination the expert witness for the plaintiff testified that he broke down the $15,000 difference between the before and after valuations into damages for value of the land taken ($10,500) and severance damages ($4,500). "Severance damages" is a shorthand term for the damages caused by "the direct and proximate lessening in the value of the remaining property." 19 V.S.A. § 221(2).

The defendant's expert testified that he felt there was no severance damage to the terminal building itself; he was not asked about severance damage to the remaining land, considered apart from the terminal building. The defendant countered the plaintiff's testimony concerning severance damages to the remaining property by introducing testimony

that there was no severance damage to the terminal building, plus other evidence that would support a finding of no severance damage.

Finding Number 9 of the lower court is such a finding:

> There was some evidence of severance damage from one appraiser included in the fifteen thousand ($15,000.00) dollars' difference in the amount of forty-five hundred ($4,500.00) dollars. The Court, however, cannot find that there was severance damage in this case. All the land taken was in one piece and all to the easterly side of the property.

The effect of this finding is a statement by the court that it was not satisfied from the weight of the evidence introduced by the plaintiff that it ought to be compensated for this statutory element of damage. It amounted to a rejection not only of the amount, $4,500, but also of the very existence of such damage.

The additional evidence before the lower court relative to severance damage concerns the underlying facts upon which the experts based their opinions as to value and loss.

The 7.7 acres taken was vacant land without improvements. It was not being used by the plaintiff, and had not been used in the past. The expert witnesses adduced by both parties agreed that the highest and best use of the remaining land was its present use as a truck terminal. Although, as mentioned at the outset, the terminal building and allied facilities sit upon the 7.1 remaining acres, most of this land is open land capable of sustaining additional buildings and large parking areas.

Plaintiff's expert testified that the highest and best use of the 7.7 acres taken was for expansion of the business, to be used in conjunction with the remaining land. When asked to explain how he arrived at the figure of $4,500, he stated, "Mostly because this land is not large enough in today's general operations. But another reason is that businesses want more land. . . . And another reason is that they have a good, firm lease on there." However, the same witness also testified that he did not know the terms of the lease or the effect of the condemnation upon the lease agreement between the plaintiff and Holmes Transportation, Inc., which leases the premises from

the plaintiff, its wholly-owned real estate holding company. Thus, the principal reason for the appraiser's severance damage testimony was his belief that it is better for a business to have more land than it is currently using.

The court was required to weigh this testimony against other testimony given by the defendant's expert that the terminal manager had stated to him that plaintiff had no present plans for expansion into the area acquired by the State, and further that any future expansion of the terminal building would not be in the direction where the taken land was located. The terminal manager later testified that he did not remember making such a statement, but he did not deny making it. The defendant's appraiser also testified that in his opinion the highest and best use of the land condemned was for rural residential development. An inference that can be drawn is that since the highest and best use of the land taken was other than for expansion of the business conducted on the remaining land, the taking would not lessen the value of the remaining land. Finally, the defendant's appraiser testified that, based upon his investigation of comparable trucking terminals in the vicinity of plaintiff's, he felt the plaintiff was left with more than sufficient land area on which to conduct its business.

Both the present and potential uses of the entire tract of land were placed before the court under differing theories by the experts who based their appraisal values thereon. The questions of projected expansion and the effect of the condemnation on the feasibility of expanding were developed under conflicting evidence. They thus became factual issues for the court's determination. The result of the court's weighing of the testimony is its Finding Number 7 that the plaintiff "would [not] in any way be restricted from enlarging its terminal facilities, including building and parking areas, so that its business would be constricted in any foreseeable future."

This evidence in support of Finding Number 7 also supports Finding Number 9. The differing damage evaluations and the theories and bases in support of these evaluations were also placed before the court. While the plaintiff's assertion, based upon its expert's testimony, that the remaining land, considered separately from the terminal building, was damaged by the taking was not specifically rebutted by the de-

fendant, the defendant quite clearly produced enough evidence to counter the plaintiff's more general and essential primary assertion that severance damages should be awarded at all. The court properly discharged its function. Its finding of no severance damage is supported by credible evidence.

Our standard of review when a lower court's findings are challenged should by now be clear. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses and the weight of the evidence." V.R.C.P. 52.

■■ Where the evidence is conflicting or would support different inferences, credibility and weight are for the court when it sits as the trier of fact. This remains so whether the evidence before the court is expert or lay testimony, *In re Rathburn,* 128 Vt. 429, 436, 266 A.2d 423 (1970), and also though the expert testimony be opinion testimony. "Generally, an expert's opinion is of no greater probative value than the soundness of his reasons given therefor will warrant." *Green Mountain Marble Co.* v. *State Highway Board,* 130 Vt. 455, 464, 296 A.2d 198 (1972); *Allen* v. *Burlington Housing Authority,* 129 Vt. 8, 13, 270 A.2d 588 (1970).

■■ Since the finding that there was no severance damage is supported by the evidence, the fact that the defendant did not specifically contradict the plaintiff's testimony that the remaining land, apart from the terminal building, was damaged by the taking is irrelevant. At any rate, uncontroverted "[o]pinion testimony does not establish any material fact as a matter of law," *Valente* v. *Commercial Ins. Co.,* 126 Vt. 455, 461, 236 A.2d 241 (1967), and does not mandate a finding favorable to the party who produces such testimony. *Green Mountain Marble Co.* v. *State Highway Board, supra,* 130 Vt. at 466.

The presence of severance damages under 19 V.S.A. § 221(2) was a factual issue for the determination of the trial court. The finding made in this case that there was no severance damage was supported by credible evidence. No error is shown.

██ ██ The plaintiff's contention that the court erred in admitting oral testimony by the defendant's expert witness relative to the Bennington zoning ordinances also is without merit. There is no error in allowing an expert to testify as to value, though his opinion be based on hearsay. *Green Mountain Marble Co.* v. *State Highway Board, supra,* 130 Vt. at 468; *Gibson Estate* v. *State Highway Board,* 128 Vt. 47, 52, 258 A.2d 810 (1969). Evidence of the ordinance in this case was introduced because it was one of the factors considered by the witness in arriving at his ultimate opinion as to value.

The plaintiff also argues that the court in reaching its decision relied upon totally insufficient and improper testimony. This argument is an attack on the competency of the defendant's expert, plus the lack of similarity of the real estate transactions employed by him as a basis of comparison for appraising the value of the land here involved. Because neither of these claims now raised in this Court were raised in the trial court, we will not consider them. *In re Lovejoy,* 131 Vt. 525, 309 A.2d 926, 927 (1973); *Town of Manchester* v. *Cherbonneau,* 131 Vt. 107, 111, 300 A.2d 548 (1973); *State* v. *Bresette,* 130 Vt. 321, 322–23, 292 A.2d 817 (1972).

In its conclusions of law the court attempted to explain the method it employed in arriving at the damage figure of $5,500. It allocated seven hundred dollars ($700) per acre for the land actually taken; this amount equalled five thousand three hundred ninety dollars ($5,390). The court then included the sum of one hundred ten dollars ($110) for uncut timber upon the land condemned. In doing so error was committed; which, had the defendant appealed, might warrant reversal. But such appeal was not taken. The conclusion of law otherwise correctly states the law as set out in *Vermont Electric Power Co.* v. *Whitcomb,* 123 Vt. 87, 89, 181 A.2d 63 (1962); the entry is

*Judgment affirmed.*