### Jimmie Ann Wilson v. Elizabeth Hilske

[321 A.2d 16]

No. 243-73

Present: **Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.**

Opinion Filed June 4, 1974

*John J. Welch, Jr., Esq.,* Rutland, for Plaintiff.

*J. Fred Carbine, Jr., Esq.,* Rutland, for Defendant.

**Keyser, J.** Plaintiff brought suit to recover damages for the alienation of her husband's affections by the defendant. Trial was by court. On its findings of fact, the court entered judgment for the plaintiff to recover the sum of $2,250 damages. The case is here on appeal by defendant.

The defendant contends the trial court erred (1) in finding that there was a good marital relationship between the plaintiff and her husband, and (2) in concluding that the defendant extinguished it. The issues thus raised are primarily factual.

Findings of fact challenged on appeal are not to be set aside unless, taking the evidence in the light most favorable to the prevailing party and excluding the effect of modifying evidence, they are clearly erroneous. *Green Mt. Marble Co.* v. *State Hwy. Bd.,* 130 Vt. 455, 457, 296 A.2d 198 (1972). It is for the court to judge the credibility of the witnesses and the weight to be given to their testimony. V.R.C.P. 52.

Finding No. 3 of the court reads:

> A family relationship grew up over the period of 12 years, that as far as the plaintiff and her children are concerned was very close a relationship and until August of 1972 they had no indication that there was any

problem of the serious nature between the family and Mr. Wilson.

The evidence tested by the foregoing rules, critical to the finding excepted to, establishes the following facts. The plaintiff and her husband were married February 8, 1961. This was the second marriage for the plaintiff, and her husband adopted her children of her prior marriage. The family had always been a very close one, and they did a lot of things together. This situation changed in early September, 1972, when the defendant began seeing plaintiff's husband. Up to that time the plaintiff and her husband had not had any difficulty and everything between them was "hunky-dory." But after that time plaintiff's husband started to drift away from the family. He was hardly home to stay and didn't include the family in things that he did anymore. Even the defendant testified that she was aware in late September and October, 1972, that plaintiff's husband "did have a reasonably good relationship with his family." The plaintiff testified that the defendant's conduct affected her emotionally and the family situation never was the same as it was before the summer of 1972.

The defendant admitted she first started dating plaintiff's husband in late August, 1972. She knew he was married and living with his wife. Between September, 1972, and July, 1973, she was seeing plaintiff's husband on a regular basis and maintained an "intimate" relationship with him.

The plaintiff and her husband separated November 9, 1972, and were divorced in July, 1973. The evidence clearly establishes this was induced by and the result of the relationship of defendant with plaintiff's husband and infers an intentional doing of a wrongful act on the part of the defendant without just cause or excuse.

Defendant acknowledges that the plaintiff stated that she and her husband were on good and harmonious terms prior to his involvement with the defendant. She states: "Other testimony from various witnesses, however, tended to show that this was not so." The only testimony she cites in support of this claim relates to two other prior involvements by plaintiff's husband. There is no evidence that plaintiff had any knowledge of them prior to the time her husband left her or that such conduct affected the marital relationship.

■ Factual support of the finding by credible evidence is clearly demonstrated by the record. Defendant's first claim of error is overruled.

■ Moreover, the well-settled rule of this jurisdiction holds that if unhappy relations existed between a wife and her husband prior to the alienation, as defendant here contends, the want of affection between them goes only in mitigation of damages, not in bar of the action. Even if there was proof in this case that the plaintiff had no affection for her husband, the defendant had no right to interfere to cut off all chance of affection springing up in the future. *Hedman* v. *Siegriest,* 127 Vt. 291, 295, 296, 248 A.2d 685 (1968), and cases there cited.

Defendant secondly asserts the finding of the court that the defendant bore the responsibility for plaintiff's marital loss is not supported by the evidence. The defendant, citing cases from other jurisdictions, attempts to shield her responsibility on the ground that "she stands in the position of the pursued, one whose affections and attentions were doggedly and persistently sought by plaintiff's husband." For this reason defendant claims her acts were not the controlling causal factor in the plaintiff's loss of her husband's affections.

■ Our law does not require that a complete extinguishment of the marital relationship result from the defendant's wrongful acts. It is enough if defendant's conduct with plaintiff's husband had progressed sufficiently far beyond the limits of propriety to destroy, in part at least, the affections plaintiff's husband had for her. See *Knight* v. *Willey,* 120 Vt. 256, 259, 138 A.2d 596 (1957).

The unchallenged findings of the court are that defendant admitted she was in love with Mr. Wilson, plaintiff's husband and, knowing he was married to the plaintiff, had intimate relations with him from September, 1972, to the time of trial; that plaintiff confronted defendant concerning that relationship and defendant advised her concerning it; and that as a result of the relationship between defendant and Mr. Wilson, he left plaintiff's home. The court concluded on its findings that defendant was guilty of criminal conversation with Mr. Wilson.

The record clearly establishes that defendant's conduct progressed far beyond the limits of propriety. It wrongfully caused the separation of the plaintiff and her husband and resulted in plaintiff losing her husband's consortium. Such loss or impairment is the gist of an action for alienation. If the result of defendant's direct and intentional interference with the marital relationship of the parties is the controlling cause, it will support an action for alienation of affections. *Hedman* v. *Siegriest, supra,* 127 Vt. at 295.

In *Miller* v. *Pearce,* 86 Vt. 322, 328, 85 A. 620 (1913), this Court held "that the only difference between alienation by persuasion and alienation by adultery is, that in the former you must prove resultant loss of consortium, while in the latter the law conclusively presumes it."

Whether defendant was the pursued in her love affair with Mr. Wilson makes little difference. She certainly was a willing participant with full knowledge of all the facts. In this case the pursuer/pursued distinction is of no legal significance as a justification for defendant's conduct. *Miller* v. *Pearce, supra.*

*Judgment affirmed.*