# Kilfasset Farms Dairy, Inc. v. State Highway Board

[376 A.2d 340]

No. 252-75

Present: **Barney, C.J., Daley, Larrow, Billings and Hill, JJ.**

Opinion Filed June 7, 1977

*Peter P. Plante* and *Michael F. Hanley* of *Black and Plante,* White River Junction, for Plaintiff.

*M. Jerome Diamond,* Attorney General, and *James T. Hirsch,* Assistant Attorney General, Montpelier, for Defendant.

**Larrow, J.** The State appeals a jury verdict and judgment thereon for damages resulting from the taking of lands and rights necessary for construction of Interstate 91 in the Town of Ryegate. One concise issue is raised by the appeal, the supportability of a general verdict within the over-all range of expert testimony, where one of the component special verdicts required by 12 V.S.A. § 1905 and 19 V.S.A. § 221(2) is higher than any of the evidence presented. The same general question was involved in *Dunn* v. *State Highway Board,* 135 Vt. 26, 370 A.2d 626 (1977), but was not then decided because our view of the evidence led us to conclude that the special verdict there in question was, in fact, supported by competent evidence. Here there is no such claim, and the issue is squarely presented for decision.

The factual background is quite simple. Appellee's large farm was split in two by the highway taking. Some 92.74 acres were taken in fee, and an additional 398.4 acres were

"landlocked", as the expert witnesses colorfully describe a loss of legal access. Some damage was also done to lands not taken or rendered inaccessible. Five expert witnesses testified as to resulting damages. Estimates of damages for the land taken ranged from a high of $42,250 to a low of $21,536. Estimates of damage to the land remaining ranged from a high of $188,700 to a low of $51,000. The jury verdicts, affirmed in each particular upon a poll, were (a) $116,800 for damages for land taken, (b) $12,200 for damages to land remaining, and (c) a general verdict for total damages of $129,000, the mathematical total of (a) and (b). Judgment was entered on the verdict, and a motion for new trial or amendment of judgment filed by the State was denied. The trial court concluded that the general verdict did not outrun the testimony of the witnesses, and that the defendant was not prejudiced by the special verdicts if the jury appeared to have "misplaced" some of the values making up their general verdict. We disagree and remand for new trial.

It may well be, as the trial court evidently felt, that all we have here is a case where the jury "misplaced" some of the elements of damage. But there is nothing in the trial record to support that conclusion. The charge of the trial court, couched in the usual terms, clearly instructed the jury as to the elements of each special verdict, and there can be no doubt that they were clearly instructed that loss of land value resulting from "landlock" was an element of the special verdict as to damage to lands not taken. It is also clear they disregarded this instruction, and persisted in their verdict upon being polled. It is possible that they merely confused severance damage with compensation for land taken, but it is equally possible that they acted arbitrarily or improperly, in disregard of the evidence, in formulating their special verdicts, particularly where, as here, *both* special verdicts were outside the range of the evidence. Although not unprecedented, it is indeed unusual for a verdict to run *below* the lowest expert estimates as would be the case here were we to consider the special verdicts as only accidentally transposed; this circumstance tends to indicate either a disregard of the evidence, or such confusion as to require, in fairness, a new trial.

In *Dunn* (decided after the trial here below) we recognized the general principle expressed in *Gibson Estate* v. *State Highway Board*, 128 Vt. 47, 54, 258 A.2d 810 (1969) that if

the total verdict does not outrun the testimony it must be sustained. And we sustained the general verdict in *Dunn,* but only after determining that the general verdict *and* each component special verdict were within the range of the evidence. We emphasized that the *Dunn* jury was free to derive its own figures for the division it made from the evidence before it. In that very important aspect this case differs from *Dunn;* here the special verdict for damages to lands taken completely outran the evidence. That special verdict indicates, as appellant contends, "an obviously mistaken view of the controversy."

■■ 19 V.S.A. § 221(2), requiring condemnation damages to include the value of the property taken, and of the business thereon, and the lessening in value of remaining property and business, was enacted in 1957, by No. 242 of the Acts of 1957. 12 V.S.A. § 1905 was enacted in 1961, by No. 179 of the Acts of 1961; it calls, not only for the general verdict which would have sufficed previously, under proper instruction, but also for a breakdown into special verdicts (or findings where trial is by court) for the quite clear purpose of determining whether the special elements set out in 19 V.S.A. § 221(2) have in fact been considered and properly adjudicated. Any other construction would render its enactment purposeless. The great variance here between the testimony and the special verdict on damages for lands taken compels a conclusion of improper adjudication and dictates remand for new trial. A similar, less expensive result could have been obtained by returning the jury for a further consideration of the case under the provisions of 12 V.S.A. § 1945, had the trial court reached, as we do, the conclusion that the jury had mistaken the law or the evidence.

We note further that although not strictly applicable to this case, V.R.C.P. 49 supports special findings as controlling a general verdict inconsistent therewith, as well as the alternatives of return for further consideration or for new trial. In light of its provisions, and general principles of fairness, we have rejected the alternative proposed by the appellant of a compulsory reduction in the special verdict here in question. To accept it would be to conclude without record support that there was no element of mistake pervading *both* special verdicts. We are convinced this matter was improperly adjudicated, but we are not prepared to rule as a matter of law, on the record before

us, exactly what factors may have motivated the jury's erroneous special verdict.

*Judgment vacated, and cause remanded for new trial.*