### Vermont Marble Company v. Town of West Rutland

[360 A.2d 91]

No. 249-74

Present: Smith, Daley, Larrow, Billings, JJ. and Shangraw, C.J. (Ret.), Specially Assigned

Opinion Filed June 1, 1976

Motion for Clarification of Mandate Denied June 16, 1976

*Ryan, Smith and Carbine, Ltd.* (*Frederick deG. Harlow* on the Brief), Rutland, for Plaintiff.

*Sullivan & McCaffrey*, Rutland, for Defendant.

**Daley, J.** The plaintiff appeals from a decision of the Rutland Superior Court determining the correct valuation of each of two marble quarries owned by it in the Town of West Rutland, Vermont, for the taxable year of 1972. The various issues raised by the plaintiff are for the most part challenges to the findings of fact made by the trial court. The standard by which such a challenge is tested is stated in V.R.C.P. 52. For a definition of this test see *Green Mountain Marble Co.* v. *State Highway Board*, 130 Vt. 455, 296 A.2d 198 (1972).

32 V.S.A. § 4467 requires the trial court on appeal (from the Board of Civil Authority) to determine the correct valuation of the property, and, as this Court stated in *International Paper Co.* v. *Town of Winhall*, 133 Vt. 385, 386-87, 340 A.2d 42 (1975), "In the appraisal proceedings conducted by the court below, its function is to act de novo, and to make its own factual determination from the evidence presented to it." See also *Town of Barnet* v. *Central Vermont Public Service Corp.*, 131 Vt. 578, 580, 313 A.2d 392 (1973). Both parties agree that the court's duty was to appraise each property at its fair market value, a term well defined in our cases. See *Bookstaver* v. *Town of Westminster*, 131 Vt. 133, 300 A.2d 891 (1973).

The real estate in question is the so-called Covered Kitchen Quarry, 32.4 acres of land, and Main No. 2, 86.4 acres of land. Underneath these lands lie marble deposits. One of the quarries, Covered Kitchen, was a non-operating quarry in the year 1972.

As is usual in tax appeals of this nature, the evidence as to value was introduced by expert appraisers. Without going into the appraisal approach used by these witnesses, the differing value opinions are as follows: Plaintiff's expert determined the value of Covered Kitchen to be minus $69,000.00 and that of Main No. 2 to be $41,000.00. The defendant's expert valued Covered Kitchen Quarry (land only) at $350,000.00 and the Main No. 2 Quarry (land only) at $230,000.00; the combined marble deposits were valued at $2,986,777.00. These three figures added together equal $3,566,777.00. The trial court's ultimate finding of fair market value is as follows:

> The court finds from all of the evidence that the fair market value of the Covered Kitchen Quarry land and marble deposit on April 1, 1972 is five hundred thousand dollars ($500,000) and that the fair market value of Main No. 2 Quarry land and marble deposit is one million dollars ($1,000,000).

This finding of fair market value is the court's appraisal of each property for the year in question. In its judgment order the court set each property at the listed value "an amount equal to fifty per cent of the appraisal value." See 32 V.S.A. § 3481.

The defendant relies on *Record* v. *State Highway Board,* 121 Vt. 230, 154 A.2d 475 (1959). There, the judgment was held to be supported by the facts found where the findings on values, within the range of values presented by opposing expert witnesses, demonstrated that the trial court had exercised its own independent judgment. *Id.* at 239.

The facts as found in the present case, however, lead us to a different conclusion. It is axiomatic that the court's decision of fair market value must be based upon legitimate evidence. *Petition of Mallary,* 127 Vt. 412, 250 A.2d 837 (1969).

Many of the court's findings of fact are but recitations of the testimony and opinions of the various witnesses and cannot be construed as findings of fact. See *Krupp* v. *Krupp,* 126 Vt. 511, 236 A.2d 653 (1967). The approaches to value utilized by the parties can safely be said to be that of capitalization of income; the plaintiff's expert employed a formula for the capitalization of net income to arrive at his fair market value; the defendant's expert capitalized profit of marble

brought to the surface of the ground. Basically, as part of his formula each appraiser employed different economic life figures, although production figures were about the same. The principal controversy centered around the estimated reserves of marble, economic life, and the value of marble in the ground. The court's findings of fact upon these issues compel us to find error.

First and foremost there is an error in the amount of proven and exposed reserve in the Covered Kitchen Quarry which may have been relied upon by the court in arriving at its fair market value. The court found such reserve to have been 6,685,000 cubic feet; the only figure supported by the evidence is 1,285,265 cubic feet, contrary to the court's findings 22 and 25 as to this quarry. Leaving out this error, the evidence reveals that the production figures and estimated reserves are about the same for each quarry.

The average annual production for each quarry was as follows: Covered Kitchen, 119,333 cubic feet; Main No. 2, 119,777 cubic feet. The estimated and proven and exposed reserves was 1,285,265 cubic feet, Covered Kitchen, and 2,427,000 cubic feet, Main No. 2. As claimed by the plaintiff, the court's finding that 5,400,000 cubic feet of proven and exposed reserve should have been added to Covered Kitchen is not supported by the evidence, and therefore its finding that such cubic footage would reflect upon the economic life of the quarry and increase it from nine years, thereby reflecting its market value upward, is equally unsupportable.

The court found that in arriving at the fair market value probable reserves should be taken into consideration along with exposed and proven reserves in determining the economic life of each quarry. This finding was the subject of conflicting testimony and is supported by the evidence. Although the court's finding as to the amount of this probable reserve to be added to each quarry was a mere recitation of evidence and therefore not a finding of fact, see *Krupp* v. *Krupp, supra*, it appears from the evidence that 2,000,000 cubic feet of such type of reserve could be added to Covered Kitchen and 1,320,000 cubic feet to Main No. 2. A simple addition then shows the total estimated reserves proven exposed and prob-

able of each quarry to be within 461,735 cubic feet of each other.

Estimated reserves are a necessary factor in the computation of the economic life of a quarry. The total reserve divided by production equals the economic life expressed in years. Production, estimated reserves and economic or physical life are necessary factors in the capitalization of income approach seeking to arrive at present worth. Although the court disagreed in its findings as to the economic life determined by the plaintiff's appraiser for each quarry, it found that the defendant's appraiser used a figure of 25 years. The trial court found that the highest and best use of each property in question is a marble quarry; it further found that the going price for mineral leases in the area was a realistic method of appraising the surface of the land and the marble in the ground. Having done so, it found as a fact that the fair market value of the marble in the ground is ten cents per cubic foot of block saved, and fifteen cents per ton of salvageable waste. By this finding, it impliedly rejected the defendant's method of evaluating the surface of the land as well as the marble deposit in each quarry at $1.50 per cubic foot of marble removed from the quarry. In this connection we might point out that the subject of evaluation of land containing mineral deposits is well treated in *Farr* v. *State Highway Board*, 123 Vt. 334, 189 A.2d 542 (1963).

The court made no finding as to the cubic footage of block saved or the tonnage of salvageable waste, although the undisputed evidence set forth the method of arriving at such figures. In determining the present worth of each quarry, under the formula adopted in the court's findings, hereinbefore set forth, these figures would be critical to its determination. It also appears to us that the court may have employed the extra 5,400,000 cubic feet of proven reserve which we have said is erroneous in its ultimate finding of fair market value. Interestingly, if this figure were employed, Covered Kitchen, which it found to have a fair market value of $500,000, would have far more marble in the ground than its sister quarry, Main No. 2, valued at $1,000,000.00.

In the light of the production figures, estimated reserves found by the court, even utilizing an economic life of 25 years and applying the court's finding as to the value of marble in

the ground, the ultimate finding of one quarry being one-half the value of the other is inconsistent and not supported by the facts as found by the court. We are at a loss to determine how the court under its findings of fact could have arrived at its findings of value, and as previously stated, we find no basis under the facts made by the court for valuing Main No. 2 at twice the value of Covered Kitchen. Such conclusion cannot be reached from the facts as found. We conclude that the court's finding of fair market value as to each quarry is clearly erroneous.

*The judgment not being supported by the facts as found, the entry will be judgment reversed and cause remanded.*