*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0807**

Gary A. Meiners, et al.,
Respondents,

vs.

Kruckow Companies, LLC, defendant and third party plaintiff,
Appellant,

vs. Anthony R. Hammell, et al., third party defendants,
Respondents.

**Filed January 5, 2015
Affirmed
Smith, Judge**

Houston County District Court
File No. 28-CV-12-739

Robert G. Benner, Dunlap & Seeger, PA, Rochester, Minnesota (for respondents Meiners, et al.)

Paula Duggan Vraa, Patrick H. O'Neill, Jr., Jennifer L. Young, Larson King, LLP, St. Paul, Minnesota (for appellant)

James R. Forsythe, Streater & Murphy, P.A., Winona, Minnesota (for respondents Hammell, et al.)

Considered and decided by Ross, Presiding Judge; Smith, Judge; and Harten, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH**, Judge

We affirm the district court's grant of summary judgment in favor of respondents on both their claim for a declaratory judgment and appellant's reformation counterclaim because the lease is unambiguous and respondents are entitled to judgment as a matter of law. We also affirm the district court's award of attorney fees and costs because we affirm the grant of summary judgment to respondents.

## FACTS

At some point before February 2008, respondent Gary Meiners asked Gary Kruckow, the chief manager of appellant Kruckow Companies, whether the company would be interested in purchasing his parents' homestead, which his parents had lost through foreclosure so that his parents could continue to live on the property. Kruckow Companies purchased the homestead and sold the property to Gary Meiners and his wife on a contract for deed. In exchange, the Meinerses granted Kruckow Companies a right to quarry and an option to purchase certain other land.

On the same day as the contract for deed was signed, the Meinerses and Kruckow Companies signed a first-right-of-refusal contract, giving Kruckow Companies the first right to refuse to purchase other property from the Meinerses. The property was described as "[t]he NW1/4 of the SW1/4 lying East of the public highway in Section 5,

2

Township 101 North of Range 5 West of the Fifth Principal Meridian, excepting Highway Right of Way" (Parcel 2).[1]

On January 22, 2009, the Meinerses and Kruckow Companies signed a quarry-lease-with-option-to-purchase contract. The Meinerses leased to Kruckow Companies "[t]he quarry located in the NW1/4 of the SW1/4 lying East of the public highway in Section 5, Township 101 North of Range 5 West of the Fifth Principal Meridian, excepting Highway Right of Way. The quarry is the existing hole and all future reserves." Under the lease agreement, Kruckow Companies was required to pay the Meinerses $200.00 per year in rent and $0.25 "per cubic yard of rock removed." The option to purchase the quarry also contained the same legal description of the quarry and the language regarding "future reserves."

On December 1, 2011, the Meinerses conveyed Parcel 1, the disputed property, to respondents Anthony and Luan Hammell in a quit claim deed:

> The Southeast Quarter of the Northeast Quarter and the Northeast Quarter of the Southeast Quarter of Section 5, Township 101 North, of Range 5 West of the Fifth Principal Meridian.
>
> The East Half of the Northwest Quarter in Section 8, all that part of the Southwest Quarter of the Northwest Quarter of Section 8 lying East of the public highway; the Northwest Quarter of the Northeast Quarter of Section 8; the Southwest Quarter of the Southeast Quarter of Section 5 and the Southeast Quarter of the Southwest Quarter of Section 5, all in Township 101 North of Range 5 West.

---

[1] The tracts of land were identified as Parcel 2 and Parcel 1 in the district court's order. It is for that reason that we use these descriptions.

The Southwest Quarter of the Southeast Quarter of
Section 19, Township 102 North, Range 5 West.

The Northwest Quarter of the Southeast Quarter of
Section 19, Township 102 North, Range 5 West.

Shortly after this conveyance, Kruckow Companies' attorney wrote to the Meinerses and Hammells, expressing Kruckow Companies' intent to exercise its option to purchase the quarry land. Kruckow Companies believed that some of the land involved in the quarry lease may have been conveyed to the Hammells.

All three of the contracts signed by the Meinerses and Kruckow Companies were drafted by attorney Michael Murphy. According to Gary Kruckow, he told Murphy "that the [quarry lease] agreement needed to include the right to quarry and option to purchase land containing future reserves, including the [d]isputed [l]and." Murphy indicated that the language, "[t]he quarry is the existing hole and all future reserves," accomplished this. Gary Kruckow alleges that both he and Gary Meiners intended for the quarry lease and option to include Parcel 1. In contrast, Gary Meiners alleges that he never discussed future reserves with Gary Kruckow.

Murphy stated in his deposition that he represented both the Meinerses and Kruckow Companies because "they came in and they . . . seemed to be on the same page as to what they wanted to do." According to Murphy, the parties discussed the location of the quarry but did not discuss limiting or expanding the quarry lease to other property. Murphy acknowledged that he had never visited the quarry and did not know where the quarry was located. As a result, he "would have no way of knowing" the location of the future reserves. Murphy explained that he understood "future reserves" to mean "what

4

could be quarried." The parties did not ask Murphy to add the future-reserves language to the contract. Instead, he added the language because he did not know the exact location of the quarry and because his attorney-father had used this language in other quarry leases. Murphy explained that he would have discussed the language with the parties when they went through the contract before signing it.

On August 13, 2012, the Meinerses sued Kruckow Companies, requesting a declaratory judgment regarding the meaning of "future reserves" in the quarry lease and option to purchase. The Meinerses argued that, according to the legal description, the quarry lease and option to purchase only involved Parcel 2. The Meinerses also alleged that Kruckow Companies had breached the quarry lease by failing to pay rent and fees for the removed rock, and requested an accounting of the balance the Meinerses owed under the contract for deed and the rock removed from the quarry.

In response, Kruckow Companies requested a declaratory judgment that the quarry lease included Parcel 1 and reformation of the quarry lease to include this land. Kruckow Companies brought counterclaims against the Meinerses for promissory estoppel, equitable estoppel, fraud and intentional misrepresentation, negligent misrepresentation, and unjust enrichment. Kruckow Companies also brought a third-party complaint against the Hammells, claiming that some of the land conveyed to them in the quit claim deed (Parcel 1) was included in the quarry lease and option to purchase. Kruckow Companies again requested a declaratory judgment and reformation of the quarry lease and alleged claims for promissory estoppel, equitable estoppel, and unjust enrichment.

5

The Meinerses moved for partial summary judgment on their claim for a declaratory judgment. The district court granted partial summary judgment to the Meinerses. The district court concluded that the language in the quarry lease and option to purchase and in the first right of refusal was unambiguous, stating:

> Pursuant to the plain and ordinary meaning of the language in the legal description, the quarry is limited to the existing hole and all future reserves located in Parcel 2. The description does not expand the quarry beyond Parcel 2. It does not describe the quarry as the existing hole and all future reserves *outside* of Parcel 2. The first sentence in the legal description locates the quarry; the second sentence explains what components make up the quarry within that location.

The district court also concluded that the quarry lease and first right of refusal were integrated and that the parol-evidence rule prohibited the introduction of extrinsic evidence regarding the parties' agreement. Finally, the district court concluded that Kruckow Companies' reformation and other counterclaims did not preclude partial summary judgment.

The Meinerses then moved for attorney fees and costs. The Meinerses argued that the grant of partial summary judgment resolved their request for a declaratory judgment and rendered their claims for breach of contract and an accounting moot. Kruckow Companies filed its own motion for attorney fees and costs, arguing that the Meinerses were not entitled to fees and costs because they "lost a majority of their claims and should not be considered the prevailing party in this litigation."

6

The district court granted the Meinerses' motion for attorney fees and denied Kruckow Companies' motion. The district court found that the Meinerses were the prevailing party and awarded them $39,251.80 in attorney fees.

On March 19, 2014, the parties stipulated that the Meinerses would dismiss their breach-of-contract and accounting claims against Kruckow Companies

> on the condition that [the Meinerses] agree not to assert such claims or to sue Kruckow [Companies] regarding such claims unless the [district c]ourt's [o]rder for [p]artial [s]ummary [j]udgment or the judgment upon which it is based is reversed on appeal and this matter is remanded to [the district court] for further proceedings.

The parties also stipulated to the entry of the attorney-fees judgment against Kruckow Companies for $39,251.80 and stipulated that the partial-summary-judgment order should be amended to dismiss Kruckow Companies' claims against the Hammells. The district court ordered dismissal of the Meinerses' breach-of-contract and accounting claims and Kruckow Companies' claims against the Hammells, and entered judgment against Kruckow Companies for $39,251.80. According to the parties' agreement, the district court stayed enforcement of the attorney-fees judgment pending this appeal by Kruckow.

**DECISION**

**I.**

A district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. "We review a district court's

summary judgment decision de novo." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). "On appeal from summary judgment, we must review the record to determine whether there is any genuine issue of material fact and whether the district court erred in its application of the law." *Dahlin v. Kroening*, 796 N.W.2d 503, 504 (Minn. 2011). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). But

> there is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions.

*DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997).

Kruckow Companies first argues that the district court erred by finding that the quarry lease is unambiguous. "[A] lease is a form of a contract." *Metro. Airports Comm'n v. Noble*, 763 N.W.2d 639, 645 (Minn. 2009). "A contract is ambiguous if its language is reasonably susceptible to more than one interpretation." *Id.* (quotation omitted). "Unambiguous contract language must be given its plain and ordinary meaning." *Id.* "Where the terms of a contract are clear and unambiguous, there is no room for construction or interpretation." *Colangelo v. Norwest Mortg., Inc.*, 598 N.W.2d 14, 18 (Minn. App. 1999) (quotation omitted), *review denied* (Minn. Oct. 21, 1999). "The determination of whether a contract is ambiguous is a question of law, but the

interpretation of an ambiguous contract is a question of fact for the jury." *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003) (citation omitted).

The first right of refusal involved "[t]he NW1/4 of the SW1/4 lying East of the public highway in Section 5, Township 101 North of Range 5 West of the Fifth Principal Meridian, excepting Highway Right of Way." The quarry lease and the option to purchase involved "[t]he quarry located in the NW1/4 of the SW1/4 lying East of the public highway in Section 5, Township 101 North of Range 5 West of the Fifth Principal Meridian, excepting Highway Right of Way. The quarry is the existing hole and all future reserves." The legal descriptions of the property involved in these agreements are identical and concern only Parcel 2. The legal descriptions are not "reasonably susceptible to more than one interpretation." *See Noble*, 763 N.W.2d at 645 (quotation omitted).

But Kruckow Companies argues that "future reserves" could reasonably be interpreted as referring either to reserves located in Parcel 2 or to "all future reserves in the adjacent parcels." No Minnesota case defines "reserves" or "future reserves." As a result, Kruckow Companies cites two foreign cases. In *Vt. Marble Co. v. Town of W. Rutland*, the Vermont Supreme Court discussed the value of two quarries, their "proven and exposed reserve[s]," and their "probable reserves." 360 A.2d 91, 92-93 (Vt. 1976). But *Vt. Marble Co.* does not define or discuss the location of the reserves, and is not relevant to this appeal. Similarly, in *Knox Lime Co. v. Me. State Highway Comm'n*, the Maine Supreme Judicial Court did not define reserves, but stated that the value of the

mineral reserves involved in the case was "the value of the limestone." 230 A.2d 814, 825 (Me. 1967).

Kruckow Companies suggests that these cases define "reserves" as "all available rock that could be mined." Even if the foreign cases support that definition, and we do not believe that they do, this definition does not require the reserves to include adjoining property. The quarry lease refers to a quarry located in Parcel 2. There is no indication that "future reserves" includes rock outside of Parcel 2, the only property described in the lease. As the district court explained, "[t]he first sentence in the legal description locates the quarry; the second sentence explains what components make up the quarry within that location." "Future reserves" cannot reasonably refer to the disputed property outside of Parcel 2.

Kruckow Companies next argues that the district court erred by refusing to consider extrinsic evidence of the parties' agreement to include Parcel 1 in the quarry lease and option to purchase. The parol-evidence rule precludes evidence of oral agreements made prior to or contemporaneous with the execution of an integrated and unambiguous written agreement. *Norwest Bank Minn., N.A. v. Midwestern Mach. Co.*, 481 N.W.2d 875, 881 (Minn. App. 1992), *review denied* (Minn. May 15, 1992). Because the contract is unambiguous, the district court properly refused to consider extrinsic evidence of the parties' alleged oral agreement prior to their execution of the written agreement. *See id.*

Because the quarry-lease-and-option-to-purchase agreement is unambiguous and refers only to property in Parcel 2, the district court properly concluded that there was no

10

genuine issue of material fact remaining for trial. *See DLH, Inc.*, 566 N.W.2d at 71 ("[T]here is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which [does] not . . . permit reasonable persons to draw different conclusions."). The Meinerses and the Hammells are entitled to judgment as a matter of law, and we therefore affirm the district court's grant of partial summary judgment on the Meinerses' declaratory-judgment claim.

## II.

Kruckow Companies argues that, if the quarry lease is unambiguous, "summary judgment should still be reversed on the reformation claim." Kruckow Companies does not challenge the district court's decision regarding its other counterclaims.

"Reformation is an equitable remedy that is available when a party seeks to alter or amend language in a contract so that the contract reflects the parties' true intent when they entered into the contract." *SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*, 795 N.W.2d 855, 864 (Minn. 2011).

> A written instruction can be reformed by a court if the following elements are proved: (1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party.

11

*Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn. 1980). The elements of reformation "must be established by evidence which is clear and consistent, unequivocal and convincing." *Id.*

The district court concluded that Kruckow Companies did not establish a genuine issue of material fact regarding any of the three elements required for reformation. As a result, the district court granted summary judgment sua sponte to the Meinerses on the reformation counterclaim, an action that was permissible. *See Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. 275, 280-81, 230 N.W.2d 588, 591-92 (1975). And Kruckow Companies does not challenge the district court's authority to grant summary judgment on the reformation counterclaim.

Regarding the first and second elements, Kruckow Companies alleges that the parties agreed to include Parcels 1 and 2 in the quarry lease and option to purchase and that the written agreement failed to express the parties' intention. In his affidavit, Gary Kruckow alleges that he and Gary Meiners agreed that the quarry lease and option to purchase would include Parcels 1 and 2. Gary Kruckow also alleges that he told Murphy of this agreement and that Murphy responded that the written agreement accomplished the parties' intent to include the disputed land. Viewing the evidence in the light most favorable to Kruckow Companies, *see STAR Ctrs., Inc.*, 644 N.W.2d at 76-77, Kruckow Companies appears to have raised genuine issues of material fact regarding the first two elements required for reformation of the agreement.

But Kruckow Companies has not raised a genuine issue of material fact regarding the third element required for reformation. The third element requires either a mutual

mistake "or a unilateral mistake accompanied by fraud or inequitable conduct by the other party." *Nichols*, 294 N.W.2d at 734. At oral argument before this court, Kruckow Companies explained that it was only alleging a mutual mistake, not a unilateral mistake caused by fraud or inequitable conduct on the part of the Meinerses. "[I]n order to have a mutual mistake, it is necessary that both parties agree as to the content of the document but that somehow through a scrivener's error the document does not reflect that agreement." *Id.* Here, there is no mutual mistake and no evidence of a scrivener's error because the written agreement reflects the Meinerses' understanding of the parties' agreement. *See id.* According to his affidavit, only Gary Kruckow described the location of the reserves to Murphy. And only Kruckow Companies alleges that the parties intended a different agreement than that found in the written agreement. This case involves only a unilateral mistake on the part of Kruckow Companies, which is "not a ground for reformation." *See id.*; *see also SCI Minn. Funeral Servs., Inc.*, 795 N.W.2d at 866-67 (stating that "any mistake was a unilateral mistake" and that the appellants did not challenge the district court's conclusion that there was no evidence of fraud or inequitable conduct).

## III.

"We review the district court's award of attorney fees or costs for abuse of discretion." *Brickner v. One Land Dev. Co.*, 742 N.W.2d 706, 711 (Minn. App. 2007), *review denied* (Minn. Mar. 18, 2008). "Recovery of attorney fees must be based on either a statute or a contract." *Schwickert, Inc. v. Winnebago Seniors, Ltd.*, 680 N.W.2d 79, 87 (Minn. 2004). The quarry lease provides for the recovery of attorney fees:

13

> In the event that any action is filed in relation to this lease agreement, the unsuccessful party in the action shall pay to the successful party, in addition to all the sums that either party may be called upon to pay, a reasonable sum for the successful party's attorney's fees and costs.

Kruckow Companies argues that a reversal of the district court on the above issues requires a reversal of the attorney-fees award. It does not challenge the attorney-fees award in the event that we affirm the district court's order. Because we affirm the district court's order, we also affirm the award of attorney fees to the Meinerses.[2]

**Affirmed.**

---

[2] In their brief, the Meinerses request additional attorney fees incurred on appeal. Because the Meinerses did not submit a motion regarding their request for attorney fees on appeal, we decline to consider their request. *See* Minn. R. Civ. App. P. 139.06, subd. 1 ("A party seeking attorneys' fees on appeal shall submit such a request by motion under Rule 127.").