**Margaret A. BRICKNER, et al., Respondents,**

v.

**ONE LAND DEVELOPMENT COMPANY, Defendant (A06–1940), Appellant (A06–1957),**

**John Andrew Duckwall, Appellant (A06–1940), Defendant (A06–1957).**

**Nos. A06–1940, A06–1957.**

Court of Appeals of Minnesota.

Dec. 24, 2007.

Bradley A. Kletscher, Tammy J. Schemmel, Barna, Guzy & Steffen, Ltd., Minneapolis, MN, for respondents.

Kevin E. Giebel, Giebel, Gilbert, Williams & Kohl, P.L.L.P., St. Paul, MN, for appellant One Land Development Company.

Lawrence H. Crosby, Jay D. Olson, Crosby & Associates, St. Paul, MN, for appellant Duckwall.

Considered and decided by KLAPHAKE, Presiding Judge; SHUMAKER, Judge; and WORKE, Judge.

## OPINION

KLAPHAKE, Judge.

In these consolidated appeals from a declaratory judgment action, appellant One Land Development Company challenges the district court's conclusion that respondents Margaret Brickner, acting for herself and as trustee of the Thomas E. Brickner Credit Trust, and Braam Investment, Inc., effectively canceled a real estate contract entered into between respondents and One Land. Respondent John Andrew Duckwall, a purported assignee of One Land, challenges the district court's order concluding that he slandered respondents' title and requiring him to pay attorney fees.

Because respondents canceled the contract in accordance with Minn.Stat. § 559.21 (2002), as modified by contract, we affirm the cancellation. Because Duckwall did not rebut respondents' proof of malice in the slander of title action, we affirm the slander of title determination. However, because of a contract with the subsequent purchaser of the real estate, respondents are responsible for only one-half of the attorney fees claimed as special damages in the slander of title action. Accordingly, we modify the award of attorney fees by reducing them by half to comport with this agreement.

## FACTS

Respondent Margaret Brickner, personally and as trustee for the Thomas E. Brickner Credit Trust (collectively, "Brickner"), owned land in Fridley on which was located a restaurant named Sandee's. Respondent Braam Investments, which was owned by Brickner's daughter, Cindy Braam, and son-in-law Garry Braam, operated the restaurant and leased the building from Brickner.

Appellant One Land Development Company is a Minnesota corporation engaged in real estate development. Thomas Gambucci is the principal shareholder of One Land. Gambucci, acting for One Land, wanted to purchase the Brickner property. One Land intended to build senior housing on the property and to continue to operate the restaurant. Appellant John Duckwall is a presumed assignee of the purchase agreement described below.

On April 22, 2002, respondents and One Land entered into a purchase agreement for the property and restaurant fixtures. According to the purchase agreement, One Land had 120 days in which to secure the necessary government approvals for construction; this was termed the "Approval Period." Closing would take place no more than 30 days after expiration of the Approval Period. One Land could extend the Approval Period once by 60 days by giving respondents notice and paying $20,000 in earnest money. One Land exercised this option and extended the Approval Period from August 22, 2002, to October 22, 2002. One Land also waived· the contract precondition pertaining to government approvals.

Under the agreement, respondents warranted that they had "good and marketable" title to the property, "free and clear of any and all … easements … except as disclosed in this Agreement or in any exhibit containing permitted exceptions attached hereto." It is undisputed that respondents' attorney failed to attach an exhibit to the purchase agreement disclosing the existence of two easements located on the property.

The agreement further required respondents to provide a title insurance policy evidencing tax liens, bankruptcies, judgments, assessments, and pending assessments. This was collectively known as "Title Evidence." One Land then had 20 days to examine the Title Evidence and make objections to it, and respondents had 60 days to cure any defects based on those objections. Closing would occur on the scheduled closing date or within 10 days after the notice of cure, whichever was later. One Land could either terminate the agreement if respondents failed to cure defects or waive any objections.

On October 11, 2002, One Land received the title insurance policy, with an effective date of August 19, 2002. This policy included a reference to three easements. One Land's only comment to the policy concerned one of the easements, which had been erroneously included. A second title insurance policy was issued on November 6, 2002, deleting the erroneous easement. On November 12, 2002, respondent notified One Land that closing had to occur by November 22, 2002, or One Land would be in default under the terms of the purchase agreement. No closing occurred.

On December 9, 2002, respondents served a notice of statutory cancellation under Minn.Stat. § 559.21 (2002). According to the purchase agreement, the parties agreed to cancellation in accordance with Minn.Stat. § 559.21 in the event of a default and also agreed that the 60–day statutory notice period would be shortened to 30 days, as permitted by Minn.Stat. § 559.21, subd. 4. The notice gave One Land until January 8, 2003, to close. No closing took place, and One Land took no action opposing cancellation.

On January 8, 2003, Gambucci notified respondents' attorney that he had assigned his interest in the contract to Duckwall. Although Gambucci asserted that he had told respondents earlier of his intent to assign the contract, January 7 or 8, 2003, was the first time respondents learned Duckwall's name and address.

On April 8, 2003, respondents entered into a purchase agreement with Town Center Development. Appellants did not contact respondents about the property from January 9, 2003, until December 3, 2003, when Duckwall filed a notice of adverse claim against the property. On February 2, 2004, Town Center entered into an agreement with respondents to pay 50% of any attorney fees and costs incurred by respondents in quieting title.

Respondents began this declaratory judgment action in April 2005. After a multi-day trial to the court ending on May 26, 2005, the court issued a preliminary order directing Duckwall to discharge the notice of adverse claim against the property. On August 23, 2005, the district court issued its second order, concluding that (1) respondents properly canceled the purchase agreement; (2) appellants abandoned their interest in the agreement; (3) appellants breached the contract by failing to close; (4) appellant Duckwall slandered respondents' title; (5) appellants were not entitled to specific performance; (6) respondents had cured any potential breach of contract by providing last evidence of title and curing title defects; (7) respondents breached the contract by failing to remove easements, but appellants' claim was extinguished by the valid cancellation of the purchase agreement and appellants waived their right to make a claim; and (8) appellants failed to set forth a prima facie case of fraud and misrepresentation. Judgment was entered on September 26, 2005.

The district court denied appellants' motion for amended findings and/or a new trial on February 21, 2006 and appointed a special master to determine fees and costs pursuant to Minn. R. Civ. P. 53. By e-mail on February 27, 2006, the court acknowledged that it had not followed the recently amended Rule 53 and stated that the February 21 order would serve as notice of its intent to appoint a special master. Having received no objections, the court issued an order, appointing a special master.

The special master returned his report on April 6, 2006; the district court affirmed the report on June 28, 2006, and later awarded attorney fees of $156,957 and costs and disbursements of $19,080.46. Appellants filed a notice of appeal on October 12, 2006.

## ISSUES

1. Did the district court err by determining that respondents had canceled the purchase agreement, thus terminating appellants' interests in the real property?

2. Did the district court err by concluding that Duckwall had slandered respondents' title to the property?

3. Did the district court abuse its discretion by awarding respondents their entire claimed attorney fees for slander of title?

## ANALYSIS

*Standards of Review*

In a matter tried to the court, findings of fact will not be set aside unless clearly erroneous; deference is paid to the trial court's ability to judge the credibility of the witnesses. Minn. R. Civ. P. 52.01. Findings are clearly erroneous if "manifestly contrary" to and unsupported by the evidence. *Rogers v. Moore,* 603 N.W.2d 650, 656 (Minn.1999) (quotation omitted).

This court reviews the evidence in the light most favorable to the judgment. *Id.*

We are not bound by the district court's ruling on a question of law, which we review de novo. *Modrow v. JP Foodservice, Inc.*, 656 N.W.2d 389, 393 (Minn. 2003). Construction of an unambiguous contract is a question of law. *Wolfson v. City of St. Paul*, 535 N.W.2d 384, 386 (Minn.App.1995), *review denied* (Minn. Sept. 28, 1995). We review the district court's award of attorney fees or costs for abuse of discretion. *Kellar v. Von Holtum*, 605 N.W.2d 696, 703 (Minn.2000); *Becker v. Alloy Hardfacing & Eng'g Co.*, 401 N.W.2d 655, 661 (Minn.1987).

*Cancellation under Minn.Stat. § 559.21*

The seller in a contract for the conveyance of real estate may cancel the contract upon default by serving on the purchaser a notice of intent to cancel specifying the default. Minn.Stat. § 559.21, subd. 2a (2002). The statutory 60–day notice period may be shortened to 30 days by agreement of the parties. Minn.Stat. § 559.21, subd. 4 (2002). During the notice period, the buyer may cure the default and reinstate the contract by paying certain costs and fees. Minn.Stat. § 559.21, subd. 2a. The parties here agreed that in the case of default in performance by either party, the other party could cancel the agreement upon 30 days notice in compliance with Minn.Stat. § 559.21 (2002).

Under the statute, the party opposing cancellation may cure the default, or in the alternative, may bring an action or seek injunctive relief, so long as that action is begun before the cancellation period expires. Minn.Stat. § 559.211, subd. 1 (2002); *Bell v. Olson*, 424 N.W.2d 829, 831 (Minn.App.1988); *Thomey v. Stewart*, 391 N.W.2d 533, 535–36 (Minn.App.1986).

■ Appellants may have had a basis for avoiding cancellation based on the breaches of contract cited by them, but by failing to take action within the 30–day cancellation period, appellants waived their right to oppose cancellation. *See Thomey*, 391 N.W.2d at 535–36. The district court did not err by concluding that respondents properly canceled the purchase agreement, thus terminating One Land's interest in that agreement and any interest that Duckwall acquired by assignment.

*Slander of Title*

■ The elements of a slander of title claim are (1) a false statement concerning the ownership of real property; (2) publication of the false statement; (3) malice; and (4) special damages. *Paidar v. Hughes*, 615 N.W.2d 276, 279–80 (Minn. 2000).

■ Filing a document known to be inoperative constitutes a false statement. *Kelly v. First State Bank of Rothsay*, 145 Minn. 331, 332, 177 N.W. 347, 347 (1920). The record supports the district court's determination that Duckwall knew the purchase agreement had been canceled. "[O]nce statutory notice has been served and cancellation effected, all rights between the parties under a contract for deed are terminated." *In re Butler*, 552 N.W.2d 226, 230 (Minn.1996). Thus, Duckwall knew when he filed a notice of adverse claim against the property that he no longer held an interest in the property. He also satisfied the publication element by filing the notice of adverse claim. Attorney fees incurred as a result of a slander of title are considered to be special damages. *Paidar*, 615 N.W.2d at 281. Although appellants claim that respondents failed to introduce evidence of damages, respondent Cindy Braam did testify that respondents had incurred attorney fees.

■ The element of malice requires a "[r]eckless disregard concerning the truth or falsity of a matter ... despite a high degree of awareness of probable falsity or entertaining doubts as to its

truth." *Contract Dev. Corp. v. Beck*, 255 Ill.App.3d 660, 194 Ill.Dec. 423, 627 N.E.2d 760, 764 (1994) (quotation omitted). Duckwall asserts that no malice has been shown because he consulted an attorney before filing the notice of adverse claim and reasonably relied on that attorney's advice. But a mere assertion of reliance on an attorney's advice without disclosure of the basis for that reliance or the facts supporting the attorney's advice is insufficient to rebut the deliberate filing of a false statement.

From the record, it is clear that Duckwall knew the purchase agreement had been canceled; the statutory notice of cancellation required by Minn.Stat. § 559.21, subd. 3, includes specific language that cancellation terminates the contract and all claims or defenses a party has under the contract. But Duckwall offered no evidence as to the information he provided to his attorney. In order to deny a charge of malice, Duckwall could rely on the advice of his attorney only to the extent that this reliance was reasonable. Duckwall cannot assert reasonable reliance on the attorney's advice, absent evidence that the attorney had been fully informed as to all the facts surrounding Duckwall's interest in the property and the cancellation of the purchase agreement.

We conclude that Duckwall's reckless disregard of the fact of cancellation is sufficient to support a finding of malice and, therefore, the district court did not err by determining that Duckwall slandered respondents' title.

*Attorney Fees*

■ Duckwall challenges both the district court's appointment of a special master to determine costs and attorney fees for the slander of title and the amount of the award. Pursuant to Minn. R. Civ. P. 53.01(a)(2), (3), the district court may appoint a special master "only to address pretrial and post-trial matters that cannot be addressed effectively and timely by an available district judge" or to recommend findings of fact to be decided by the court without a jury that involve a difficult computation of damages or an accounting. Here, the district court directed the special master to determine costs and attorney fees to be awarded against Duckwall. The court cited the "sheer volume" of the record as a reason to appoint a special master, noting the length and complexity of the trial, the number of exhibits, and the request for a sizeable amount of fees and costs. We agree that this was an appropriate use of the skills of a special master.

■ We have reviewed the record, including the special master's report and the district court's order awarding fees, and conclude that the record supports their findings as to the amount of attorney fees and costs. But in this matter, the attorney fees are awarded as special damages for the tort of slander of title. We review the amount of an award of special damages as a question of law. *Paidar*, 615 N.W.2d at 279.

■ Attorney fees are considered to be special damages in a slander of title action because they are incurred as a direct and necessary result of the tort. *Id.* at 281. Here, however, respondents had a contractual agreement with Town Square Development that obligated Town Square Development to assume responsibility for 50% of respondents' attorney fees and costs for bringing an action to quiet title. Thus respondents' responsibility for fees and costs, and therefore their special damages, can be no greater than one-half of the fees and costs. We therefore modify the district court's order and reduce the $156,957 attorney fee award by one-half, to $78,478.50, and the $19,080.46 costs award to $9,540.23, with $4,770.11 attributable to Duckwall, and $4,770.11 attributable to One Lane.

## DECISION

Respondents canceled the contract in accordance with Minn.Stat. § 559.21 (2002). Because it failed to oppose the cancellation or seek injunctive relief before the expiration of the cancellation period, appellant One Land cannot avoid cancellation by asserting a prior breach. Because he did not produce specific facts showing reasonable reliance on his attorney's advice, appellant Duckwall failed to rebut an allegation of malice in the slander of title action. But because the court awarded attorney fees as special damages and respondents were contractually relieved of their obligation to pay one-half of their attorney fees, we modify the court's order awarding $156,957 in attorney fees from appellant Duckwall by reducing the amount by one-half to $78,478.50, and by reducing the costs levied against appellants to $9,540.23 from $19,080.46, with each appellant responsible for one-half of the costs.

**Affirmed as modified.**