*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0230**

Glendalough Homeowners' Association,
Respondent,

vs.

Jovani Nassar, defendant and third party plaintiff,
Appellant,

vs.

Evermoor Community Association, third party defendant,
Respondent,

Community Development, Inc., third party defendant,
Respondent,

HOA Financial Services, LLC, third party defendant,
Respondent,

McCombs, Frank, Roos Associates, third party defendant,
Respondent,

Southview Design, Inc., et al., third party defendants,
Respondents,

City of Rosemount, third party defendant,
Respondent.

**Filed November 23, 2015
Affirmed in part, reversed in part, and remanded
Larkin, Judge**

Dakota County District Court
File No. 19HA-CV-13-2194

Peter G. Van Bergen, Rachel B. Beauchamp, Cousineau McGuire Chartered, Minneapolis, Minnesota (for respondent Glendalough Homeowners' Association and Community Development, Inc.)

John R. Neve, Evan H. Weiner, Neve Webb, PLLC, Minneapolis, Minnesota (for appellant Jovani Nassar)

Michael J. Will, Stich Angell Kreidler Unke & Scattergood, P.A., Minneapolis, Minnesota (for respondent Evermoor Community Association)

Nicole R. Weinand, Law Offices of Thomas P. Stilp, Golden Valley, Minnesota (for respondent HOA Financial Services, LLC)

Thomas L. Garrity, Law Offices of Jeffrey A. Magnus, Bloomington, Minnesota (for respondent McCombs, Frank, Roos Associates)

Christina E. VonderHaar, Colby Lund, Arthur Chapman Kettering Smetak & Pikala, Minneapolis, Minnesota (for respondent Southview Design, Inc.)

Elisa M. Hatlevig, Jardine, Logan & O'Brien, PLLP, Lake Elmo, Minnesota (for respondent City of Rosemount)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Larkin, Judge.

## UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges the district court's summary-judgment dismissal of his claims against respondents, arguing that the district court erred by (1) concluding that the majority of his claims are barred by the two-year statute of limitations under Minn. Stat. § 541.051 (2014), (2) dismissing his claims for contribution and indemnity with prejudice, and (3) concluding that he did not raise a genuine issue of material fact regarding his slander-of-title claims. Appellant also argues that the district court erred by

denying his request for attorney fees and his request for expert-witness fees as a taxable cost. Because the district court did not err by granting summary judgment in respondents' favor or by denying appellant's expert-witness fees request, we affirm in part. But because the district court abused its discretion by denying appellant's attorney-fees request, we reverse in part and remand.

## FACTS

This case involves a dispute between appellant Jovani Nassar and respondent Glendalough Homeowners' Association (Glendalough), which began when Glendalough fined Nassar for failing to sod his property in accordance with an association covenant. Glendalough is a nonprofit corporation and a common-interest community in Rosemount, Minnesota. Glendalough is governed, in part, by a document entitled "Declaration of Covenants for Glendalough." The Glendalough declaration establishes "covenants, conditions, restrictions, reservations and easements" that apply to members of the Glendalough community. Respondent Evermoor Community Association (Evermoor) is a nonprofit corporation and "master association" under the Minnesota Common Interest Ownership Act (MCIOA), Minn. Stat. § 515B.1-101 to .4-118. *See* Minn. Stat. § 515B.2-121 (2014) (describing master associations). Glendalough is a neighborhood association within Evermoor.

Nassar is a member of Glendalough and is subject to the Glendalough declaration. In August 2008, Nassar entered into a purchase agreement with Lennar Construction to purchase a home in the Glendalough development. The parties closed on the purchase in March 2009.

3

Fady and Sylvana Chamoun are also Glendalough members and own property that borders Nassar's. Nassar's and the Chamouns' purchase agreements provided for "a drainage easement between their properties," prohibited landscaping within the easement, and required the owners to "maintain that portion of his or her yard that lies within the drainage . . . easement."

Lennar built the Nassar and Chamoun homes and retained respondent McCombs, Frank, Roos Associates (MFRA) to survey the lots and grade them according to the requirements of respondent City of Rosemount (the City). Respondent MFRA completed the grading on the Chamouns' property in August 2008. Respondents Southview Design Inc. and Southview Design and Construction Inc. (Southview) completed landscaping on the Chamouns' property the next month.

Soon after Nassar moved into his home in March 2009, he discovered problems with Lennar's grading and with Southview's landscaping. Nassar hired a civil engineer who inspected Nassar's property and opined that a drainage swale intended to be located on the property line between Nassar's and the Chamouns' lots was actually situated approximately five feet onto Nassar's property. The engineer attributed the swale's misplacement to the construction, landscaping, and sodding of the Chamouns' property and predicted that the current placement of the swale would devalue Nassar's home and "potentially create an unsafe situation" resulting from water concentration and ice. Nassar informed the City and Glendalough of the problem.

In December 2009, Nassar sued the Chamouns for negligence, nuisance, trespass, and breach of contract. Nassar alleged that the Chamouns improperly landscaped, altered

4

the grade of the drainage easement in violation of their purchase agreement, and failed to maintain the drainage easement. The district court granted summary judgment for the Chamouns, and Nassar appealed.

In May 2010, Glendalough notified Nassar that he was violating a term of the Glendalough declaration that required him to sod his yard. Glendalough informed Nassar that he had until June 15 to sod and that it could assess him a daily fine of $25 if he did not. On June 15, Glendalough began assessing the daily fine. Nassar's attorney wrote Glendalough, stating that Nassar was unable to sod because of Lennar's improper grading and the Chamouns' improper landscaping.

In March 2011, respondent HOA Financial Services LLC notified Nassar that respondent Community Development Inc. (CDI) was filing a $6,778 association lien against Nassar's property for the unpaid fines. Both HOA Financial and CDI are agents of Glendalough. HOA Financial recorded the lien in August 2011.

In February 2012, this court affirmed the district court's dismissal of Nassar's contract and trespass claims against the Chamouns, but it reversed the dismissal of his negligence and nuisance claims and remanded them for trial. *Nassar v. Chamoun*, No. A11-0793, 2012 WL 426595, at *5 (Minn. App. Feb. 13, 2012).

In October 2012, Nassar sued Lennar for rescission of their purchase agreement based on Lennar's allegedly improper grading. An arbitrator found that the grading was inadequate and, among other things, ordered Lennar to pay Nassar $13,000 for repairs. Nassar moved the district court to vacate the award, arguing that the arbitrator had exceeded his authority. The district court denied the motion, and Nassar appealed. This

court affirmed the arbitration award. *Nassar v. U.S. Home Corp.*, No. A13-1137, 2014 WL 621700, at *1 (Minn. App. Feb. 18, 2014), *review denied* (Minn. Apr. 29, 2014). Afterward, the district court granted Lennar's motion for attorney fees in part and awarded Lennar $9,852.13. Nassar appealed, and this court affirmed. *Nassar v. U.S. Home Corp.*, No. A14-1108, 2015 WL 1880294, at *1 (Minn. App. Apr. 27, 2015), *review denied* (Minn. July 21, 2015).

In December 2012, Glendalough filed the underlying suit against Nassar seeking a $26,388.45 lien on Nassar's property for assessments based on his failure to sod his property. Nassar answered with a counterclaim against Glendalough. Nassar also filed a third-party complaint against Evermoor, CDI, HOA Financial, MFRA, Southview, and the City. Nassar's claims included breach of contract, breach of fiduciary duty, due process and equal protection violations, mandamus, negligence, negligent or reckless misrepresentation, nuisance, slander of title, and trespass. In his third-party complaint, Nassar also requested "damages by way of contribution and/or indemnity, as may be appropriate, for all or any portion of the sums for which [he] may be adjudged liable to [Glendalough]."

In May 2013, on remand in Nassar's case against the Chamouns, a jury found that the Chamouns did not create a nuisance, were not negligent, and did not trespass on Nassar's property and that Nassar was not entitled to any damages. The district court denied Nassar's motions for a new trial, judgment as a matter of law, and amended findings, and this court affirmed the district court's rulings. *Nassar v. Chamoun*, No.

A13-2097, 2014 WL 4672400, at *1 (Minn. App. Sept. 22, 2014), *review denied* (Minn. Dec. 16, 2014).

In the fall of 2013, Glendalough moved for summary judgment against Nassar's counterclaims, and the other respondents moved for summary judgment against Nassar's third-party complaint. Respondents argued, in part, that all of Nassar's claims except slander of title are time-barred under Minn. Stat. § 541.051 and that Nassar failed to raise a genuine issue of material fact regarding his slander-of-title claim. The district court granted respondents' motions and dismissed Nassar's counterclaims and third-party complaint with prejudice. Nassar requested leave to move for reconsideration under Minn. R. Gen. Pract. 115.11. The district court denied his request.

In May and July 2014, Nassar successfully moved the district court for relief several times based on Glendalough's failure to respond to discovery. As a result, the district court ordered Glendalough to pay Nassar nearly $4,000 in attorney fees and prohibited Glendalough from presenting certain evidence.

In October 2014, Glendalough moved to dismiss its complaint with prejudice under Minn. R. Civ. P. 41.01(b). Glendalough stated that, "after the completion of discovery and depositions, [it] realized the issues with its case" and that it would satisfy its lien on Nassar's property and pay for the judgment owed for costs and attorney fees.

The district court initially granted Glendalough's motion, dismissed the case with prejudice, and entered judgment accordingly. Later, the district court vacated the judgment at Nassar's request. Nassar applied for taxation of cost and disbursements in the amount of $8,740.80, about half of which was for expert-witness fees, and requested

7

attorney fees under Minn. R. Civ. P. 37.02 and 37.03. The district court once again dismissed Glendalough's complaint with prejudice and denied Nassar's requests for expert-witness and attorney fees. Nassar appeals.

## D E C I S I O N

"A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). "[Appellate courts] review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). "On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio*, 504 N.W.2d at 761.

## I.

Nassar contends that the district court erred by concluding that his claims against Glendalough, Evermoor, and the City are time-barred under section 541.051. "When the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion that we review de novo." *Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634, 638 (Minn. 2006).

Section 541.051, subdivision 1(a), provides, in pertinent part:

8

> Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal . . . arising out of the defective and unsafe condition of an improvement to real property, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury . . . .

The district court determined that the grading, construction, and landscaping on and around the Nassar and Chamoun properties were improvements to real property and that all of Nassar's claims except slander of title arose from the alleged defective and unsafe condition of those improvements. The district court therefore concluded that the two-year limit under section 541.051 applies and that, because Nassar filed his counterclaim and third-party complaint more than two years after discovering the injury to his property, Nassar's claims must be dismissed as untimely.

Nassar challenges the district court's ruling, arguing that section 541.051 does not apply because Glendalough, Evermoor, and the City did not perform or furnish the grading, construction, and landscaping, and are not owners within the meaning of the statute. He relies on *Jensen-Re P'ship v. Superior Shores Lakehome Ass'n*, 681 N.W.2d 42, 42 (Minn. App. 2004) (concluding that section 541.051's two-year statute of limitations "does not apply to a suit brought by individual condominium unit owners against the condominium-owners' association charged with the duties to manage and maintain the condominium complex"), *review denied* (Minn. Sept. 21, 2004). However, Nassar never raised that argument in the summary-judgment proceeding in the district

9

court. In fact, he argued just the opposite. In his memorandum opposing respondents' summary-judgment motions, Nassar argued that Glendalough, Evermoor, and the City "own and possess an easement on the property" and, "[b]y virtue of their respective easement rights as set forth in the Master Declaration and the Declaration of Covenants . . . retain control over the drainage swale at issue." Thus, the district court never considered or determined whether any of the respondents are not owners of the property such that section 541.051 is inapplicable.

Some respondents therefore object to this court's consideration of Nassar's ownership argument. They contend that because Nassar did not argue in the district court that Glendalough, Evermoor, and the City are not owners, this court should not consider that issue. The objection has merit. "A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted). "Nor may a party obtain review by raising the same general issue litigated below but under a different theory." *Id.*

In district court, Nassar's only argument against application of section 541.051 was that his claims fall within the statutory exception for negligent-maintenance claims. The district court considered and rejected that argument, ruling that all of Nassar's claims except slander of title arise from the defective improvement to his property, and not from negligent maintenance, operation, or inspection. Nassar did not ask the district court to determine, in the summary-judgment proceeding, whether section 541.051 was inapplicable based on respondents' ownership status. Thus, Nassar has raised the same

10

general issue litigated below (the applicability of section 541.051) under a different theory (respondents' status as owners). Nassar has also reversed his position on appeal by claiming, contrary to his position in the district court, that Glendalough, Evermoor, and the City are not owners. Neither is allowed. *See id*.; *Sec. Bank of Pine Island v. Holst*, 298 Minn. 563, 564, 215 N.W.2d 61, 62 (1974) (stating that it is elementary that a party cannot shift his position on appeal). Moreover, respondents persuasively argue that the factual record necessary to address Nassar's new ownership theory is inadequate because they had no opportunity to develop the record with that theory in mind. For all of these reasons, we are not inclined to consider Nassar's new ownership theory on appeal.

Nassar notes that in his request for leave to move for reconsideration, he argued that Glendalough and Evermoor "do not own the property and were not involved in its construction" and that section 541.051 therefore does not apply. But "[m]otions for reconsideration are not opportunities to present facts that were available when the prior motion was considered and will not be allowed to supplement the record on appeal." *Am. Bank of St. Paul v. Coating Specialties, Inc.*, 787 N.W.2d 202, 206 (Minn. App. 2010) (citing Minn. R. Gen. Pract. 115.11 1997 advisory comm. cmt.), *review denied* (Minn. Oct. 27, 2010). Nassar also argues that an appellant can refine his arguments on appeal. *See Jacobson v. $55,900 in U.S. Currency*, 728 N.W.2d 510, 522-23 (Minn. 2007) (allowing refinement). But Nassar has not refined his argument; he has completely reversed it.

11

Because Nassar's current ownership theory was not presented to or considered by the district court in the summary-judgment proceeding, it is not properly before this court and we do not give it further consideration. *See Thiele*, 425 N.W.2d at 582.

As an alternative to his ownership theory, Nassar contends that section 541.051 does not bar his claims against Glendalough, Evermoor, and the City because the statute's negligent-maintenance exception applies. Subdivision 1(d) of section 541.051 provides, "Nothing in this section shall apply to actions for damages resulting from negligence in the maintenance, operation or inspection of the real property improvement against the owner or other person in possession." "There are two requirements to the exception—one based on what kind of action is involved and the other based on whom the action is against." *Siewert v. N. States Power Co.*, 793 N.W.2d 272, 288 (Minn. 2011). The district court rejected Nassar's negligent-maintenance theory based on the first requirement. The district court concluded that "Nassar's claims . . . arise from the defective condition of his property caused by the improper grading, swale construction and landscaping, and not from any party's negligent maintenance, operation or inspection of it." The district court stated, "It is the very existence of those defective conditions that caused Nassar's damages."

Nassar argues that several documents in the record "present a fact issue as to the issue of negligent maintenance." But all of those documents regard the original construction, grading, and landscaping. For example, Nassar notes that a professional engineer stated that the drainage swale violates Glendalough's and the City's requirements and that an attorney told Glendalough that the grading violated the

12

Glendalough declaration and landscaping policy. Those opinions regard the construction of the drainage swale; they do not suggest negligent maintenance, operation, or inspection. Indeed, the attorney letter that Nassar quotes from states that "the property was not graded according to the approved grading plan." Even Nassar's argument that the landscaping violated Glendalough policies is based solely on the original landscaping, and not on maintenance, operation, or inspection.

The negligent-maintenance exception to section 541.051 applies to activities that "generally occur after an improvement is built" and "are usually performed by an owner or tenant," and is meant "to leave undisturbed the limitation period for ordinary landowner's liability." *Ocel v. City of Eagan*, 402 N.W.2d 531, 534 (Minn. 1987). The allegations supporting Nassar's claims are based on the faulty construction, grading, and landscaping that was completed approximately six months before Nassar discovered his injury. The short period between the improvement and Nassar's discovery of his injury supports the district court's conclusion that Nassar's claims are not based on negligent maintenance. *Cf. Blaine v. City of Sartell*, 865 N.W.2d 723, 725 (Minn. App. 2015) (discussing a negligent-maintenance claim based on an injury caused by a ditch constructed 25 years before the injury). We therefore affirm the district court's decision that the negligent-maintenance exception does not apply as a matter of law and that all of Nassar's claims except slander of title are time-barred under section 541.051.

**II.**

Nassar contends that the district court erred by dismissing his claims for contribution and indemnity with prejudice. A district court has "a wide discretion in

13

determining whether dismissals shall be with or without prejudice." *Falkenstein v. Braufman*, 251 Minn. 444, 452, 88 N.W.2d 884, 889 (1958). Absent an abuse of that discretion, this court will not reverse a district court's decision to dismiss with prejudice. *See Mercer v. Andersen*, 715 N.W.2d 114, 120 (Minn. App. 2006) ("We review a dismissal with prejudice for an abuse of discretion . . . .").

"Contribution requires, first, a common liability of two or more actors to the injured party, and second, payment by one of the actors of more than its fair share of the common liability." *Brown v. Lee*, 859 N.W.2d 836, 840 (Minn. App. 2015) (quotation omitted), *review denied* (Minn. May 19, 2015). "Indemnity instead arises out of a contractual relationship, either express or implied by law, which requires one party to reimburse the other entirely." *Blomgren v. Marshall Mgmt. Servs., Inc.*, 483 N.W.2d 504, 506 (Minn. App. 1992) (quotation omitted). Nassar acknowledges that "the dismissal of Glendalough's claims against [him] may have rendered [his] contribution and indemnity claims moot," but he argues that if he "were to be sued again due to the defective condition, he would be entitled to seek contribution and indemnity from at-fault parties at that time."

Nassar's contribution and indemnity claims are based solely on Glendalough's suit against Nassar. Nassar's third-party complaint states that he "is seeking compensation for the damages he has suffered, to be determined at trial, from Third-Party Defendants for all or any portion of the sums for which he may be adjudged liable to [Glendalough] herein." Thus, the only contribution and indemnification claims that were dismissed are those that stem from Glendalough's suit against Nassar, which was dismissed with

14

prejudice. Nassar does not establish that the dismissal of his contribution and indemnification claims stemming from Glendalough's suit will prevent him from seeking contribution or indemnification—assuming he has a valid legal basis to do so—if he is sued by someone other than Glendalough.[1] We therefore affirm the district court's dismissal of Nassar's contribution and indemnification claims with prejudice.

**III.**

Nassar contends that the district court erred by granting summary judgment on his slander-of-title claims against Glendalough, HOA Financial, and CDI. The elements of slander of title are:

> (1) That there was a false statement concerning the real property owned by the plaintiff;
> (2) That the false statement was published to others;
> (3) That the false statement was published maliciously;
> (4) That the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.

*Paidar v. Hughes*, 615 N.W.2d 276, 279-80 (Minn. 2000).

The district court dismissed Nassar's slander-of-title claims because it concluded that Nassar presented "mere conjecture and no probative evidence to support his claim that the lien contained a false statement or was filed maliciously." The Glendalough declaration provides, in pertinent part:

> If sod and/or other Landscaping is not timely installed, then the Association shall have the right (but not the obligation) . . . to impose a fine against the Lot Owner in an amount up to

---

[1] Some respondents argue that Nassar's contribution and indemnity claims fail on the merits. Those arguments are persuasive, but because it is not necessary to do so, we do not address the substantive validity of the claims.

15

> $25 per day from the sod installation deadline through the day the sod is completely installed; and the Association shall have the right to file and enforce a lien against the Lot for such costs or fines.

It is undisputed that Nassar did not sod his yard by the installation deadline. However, Nassar argues that the lien was "unauthorized" because Glendalough did not follow procedural requirements in the master and Glendalough declaration when imposing the fines and filing the lien. Even if Glendalough violated procedural requirements, it does not follow that Glendalough maliciously made a false statement concerning Nassar's property by filing the lien. "The filing of an instrument *known to be inoperative* is a false statement that, if done maliciously, constitutes slander of title." *Paidar*, 615 N.W.2d at 280 (emphasis added). "It is clear however that, if a [person] does no more than file for record an instrument which he has a right to file, he commits no wrong." *Kelly v. First State Bank of Rothsay*, 145 Minn. 331, 333, 177 N.W. 347, 347 (1920). The person claiming slander of title has the burden to prove that the statements were false and "were made without probable cause thereof." *Quevli Farms, Inc. v. Union Sav. Bank & Trust Co.*, 178 Minn. 27, 30, 226 N.W. 191, 192 (1929). A statement constitutes slander of title "if the statement is in fact false, and knowledge of the falsity is brought home to the person making it, or if the statement is made without knowledge of its falsity, but is made with malice and for an ulterior purpose." *Virtue v. Creamery Package Mfg. Co.*, 123 Minn. 17, 46-47, 142 N.W. 1136, 1136 (1913).

Two cases inform our analysis. The first is *Brickner v. One Land Dev. Co.*, in which a real-estate-development company entered into a purchase agreement to buy a

property, and the seller served the company with a notice of statutory cancellation. 742 N.W.2d 706, 709 (Minn. App. 2007), *review denied* (Minn. Mar. 18, 2008). Later, an assignee of the company filed notice of an adverse claim against the property. *Id.* at 710. The district court concluded that the assignee slandered the title to the seller's property, and this court affirmed. *Id.* at 710, 712. Regarding the false-statement and malice elements, this court noted that "it is clear that [the assignee] knew the purchase agreement had been canceled" and "knew when he filed a notice of adverse claim against the property that he no longer held an interest in the property." *Id.* at 711, 712.

The second case is *Kelly v. First State Bank of Rothsay*, which involved a slander-of-title claim and doubt regarding the validity of the recorded mortgage underlying the claim. 145 Minn. at 332, 177 N.W. at 347. In *Kelly*, a farmer obtained a bank loan and secured the loan by granting the bank a mortgage on his farm. *Id.* His wife was to co-sign the mortgage later. *Id.* Before the bank recorded the mortgage, the farmer conveyed the farm to a third party by warranty deed "subject only to the 'recorded mortgage thereon.'" *Id.* The deed was recorded, and the third party notified the bank. *Id.* There was a dispute regarding when the third party learned of the bank's mortgage. *Id.* The farmer told the bank that he told the third party about the mortgage, but the third party insisted that he did not know of the mortgage until after he recorded his deed. *Id.*

The bank consulted its attorney and recorded its mortgage without the farmer's wife's signature. *Id.* The supreme court held that the bank was not liable to the third party for slander of title. *Id.* at 333, 177 N.W. at 348. The supreme court noted that it was unclear whether the bank was entitled to a lien due to the prior record of the third

17

party's deed and stated, "If [the bank] had lost the lien of its mortgage, then the question whether the recording of it was a wrong, depended on the question whether the act was done in good faith." *Id.* The supreme court concluded that the bank had acted reasonably and that there was no evidence of bad faith, stating:

> We think [the bank] was within its rights in acting on the assurance of [the farmer] that [the third party] had notice of [the bank's] mortgage. Good faith did not require that [the bank] determine the question of veracity between [the farmer] and [the third party] or act at its peril. We think [the bank's] president acted as the average [person] of sound business morals would or might have acted under the same circumstances and that his conduct did not render [the bank] liable.

*Id.* at 333, 177 N.W. at 348.

The circumstances in this case are more like those in *Kelly* than *Brickner*. It is undisputed that the Glendalough declaration authorized Glendalough to assess fines and file a lien if "sod and/or other Landscaping is not timely installed." It is also undisputed that Nassar informed Glendalough that he disputed the validity of the lien. But unlike the circumstances in *Brickner*, Nassar's challenge to the validity of the lien does not show that Glendalough, HOA Financial, or CDI knew the lien was inoperative at the time of filing. Like the bank in *Kelly*, which knew that there was a dispute regarding the validity of its mortgage when it recorded the mortgage, Glendalough's awareness of the dispute regarding the validity of its lien is insufficient to show malice. *See id.*

Nassar relies on the fact that Glendalough eventually vacated the lien and dismissed its case against him. But Glendalough vacated the lien *after* the district court's summary-judgment ruling. This court cannot rely on that action when reviewing the

18

district court's grant of summary judgment. *See Wall v. Fairview Hosp. & Healthcare Servs.*, 584 N.W.2d 395, 404 (Minn. 1998) (rejecting argument that appellate court "should consider the entire trial record and not merely the evidence before the district court at summary judgment").

In sum, Nassar's assertion that Glendalough did not follow requisite procedures in assessing the fines and filing the lien is not sufficient to raise a genuine issue of material fact regarding falsity and malice. When a party bears the burden of proving a claim and fails to present sufficient evidence to raise a genuine issue of material fact regarding a necessary element, summary judgment is appropriate. *See Fabio*, 504 N.W.2d at 761 ("A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law."). Because Nassar does not identify a genuine issue of material fact regarding whether Glendalough, HOA Financial, or CDI maliciously made a false statement by filing the lien on his property, we affirm the district court's summary-judgment dismissal of Nassar's slander-of-title claims.

## IV.

Nassar contends that the district court erred by denying his request for attorney fees. "We will not reverse the district court's decision on attorney fees absent an abuse of discretion." *Carlson v. SALA Architects, Inc.*, 732 N.W.2d 324, 331 (Minn. App. 2007), *review denied* (Minn. Aug. 21, 2007).

After Glendalough moved for voluntary dismissal, Nassar moved for an award of attorney fees against Glendalough under Minn. R. Civ. P. 37.02 and 37.03. Rule 37.02 authorizes the district court to "require [a] party failing to obey [an order to provide or permit discovery] . . . to pay the reasonable expenses, including attorney fees, caused by the failure." Minn. R. Civ. P. 37.02(b). Rule 37.03 authorizes the district court to order a party to pay "reasonable expenses," including reasonable attorney fees, if the party "fails to admit . . . the truth of any matter as requested pursuant to Rule 36" and the opposing party "thereafter proves . . . the truth of any such matter." Minn. R. Civ. P. 37.03(b).

As support for his attorney-fees request, Nassar argued that Glendalough's responses to his interrogatories were incomplete and inaccurate and caused him to conduct unnecessary depositions. The district court denied Nassar's request, stating, "While it may be possible to recover attorneys' fees on the basis of Rule 37.02 and 37.03, in this case [Nassar] has attempted to use those independent bases as a type of Rule 11 motion for sanctions."

Nassar argues that the district court abused its discretion by treating his attorney-fees request as a rule 11 motion. His argument is persuasive. Rule 11 "do[es] not apply to discovery requests, responses, objections, and motions that are subject to the provisions of Rules 26 through 37." Minn. R. Civ. P. 11.04. Although the district court is correct that rule 11 applies to misrepresentations to the court, *see* Minn. R. Civ. P. 11.02-.03, that is not what Nassar alleged as a basis for attorney fees.

We reverse the district court's denial of attorney fees and remand for the district court to determine the extent to which Nassar is entitled to attorney fees under rule 37.

*See Braend ex rel. Minor Children v. Braend*, 721 N.W.2d 924, 927 (Minn. App. 2006) (stating that a district court abuses its discretion when its findings are not supported by the record or it misapplies the law).

V.

Nassar contends that the district court erred by denying his request for expert-witness fees as a taxable cost. "In every action in a district court, the prevailing party . . . shall be allowed reasonable disbursements paid or incurred . . . ." Minn. Stat. § 549.04, subd. 1 (2014). "The judge of any court of record, before whom any witness is summoned or sworn and examined as an expert in any profession or calling, may allow such fees or compensation as may be just and reasonable." Minn. Stat. § 357.25 (2014); *see also* Minn. R. Gen. Pract. 127 (providing that expert-witness fees "shall be in such amount as is deemed reasonable"). "The district court is permitted to tax costs for pretrial preparation time." *Buscher v. Montag Dev., Inc.*, 770 N.W.2d 199, 209 (Minn. App. 2009), *review denied* (Minn. Oct. 28, 2009).

Generally, an award of costs and disbursements is a matter within the district court's sound discretion and will not be disturbed absent an abuse of that discretion. *Lake Superior Ctr. Auth. v. Hammel, Green & Abrahamson, Inc.*, 715 N.W.2d 458, 482 (Minn. App. 2006), *review denied* (Minn. Aug. 23, 2006). A district court abuses its discretion if its decision contravenes "logic and facts on the record," is "arbitrary or capricious," or is based on "an erroneous view of the law." *Posey v. Fossen*, 707 N.W.2d 712, 714 (Minn. App. 2006) (quotation omitted).

As support for his request for expert-witness fees, Nassar submitted an invoice from a landscape architect for 24.5 hours of work. Nassar requested reimbursement of $4,410 for the architect's fee. The district court denied the request because the invoice was "not sufficiently detailed for the Court to make a determination on what fees are taxable." The district court noted that the invoice had "no breakdown [of] how many hours were spent researching, how many spent on preparing exhibits, etc."

Nassar argues that the district court did not find that it was "unreasonable" for him to incur expert-witness costs and did not ask questions about the invoice or request supplemental documentation and that the district court therefore abused its discretion. We are not persuaded. Because the district court provided an acceptable reason for denying Nassar's request, we affirm the district court's ruling.

**Affirmed in part, reversed in part, and remanded.**